#### IN THE

# HIGH COURT OF ERRORS AND APPEALS

#### FOR THE

## STATE OF MISSISSIPPI.

---

### APRIL TERM, 1858.

### NEW ORLEANS, JACKSON, and GREAT NORTHERN RAILROAD COMPANY *v.* L. B. HEMPHILL.

### SAME *v.* L. CLEMENTS.

1. WRIT OF ERROR: GENERALLY ALLOWABLE, UNLESS PROHIBITED IN A PARTICULAR CASE.—Under the general provisions of the statute, writs of error are allowable to revise the judgments of the Circuit Court in all civil cases, unless there be an express prohibition in a particular case: and hence a writ of error will lie from the judgment of the Circuit Court, confirming, or setting aside the verdict of a jury of inquest, summoned to assess the damages accruing to the owner of land from the location of a railroad thereon, if there be no express prohibition of it in the act authorizing the proceeding.

2. STATUTES: CONSTRUCTION OF: WHEN LITERAL INTERPRETATION NOT ADOPTED.— In the construction of statutes, the main object is to ascertain the true meaning and intention of the Legislature; and where, upon a due consideration of the subject-matter of the statute, and the object intended to be accomplished by its enactment, such intention is manifest, courts will give it effect, although it be not sanctioned by the literal interpretation; but courts will not abandon the literal interpretation to carry out an alleged intention of the Legislature, if such construction be doubtful.

3. JURY: COMPETENCY OF, WHEN DEPENDING ON BEING A FREEHOLDER.—It is not necessary that a juror, summoned to assess damages accruing to the owner of land, by reason of the location of the New Orleans, Jackson, and Great Northern

Railroad thereon, should own a freehold estate in lands in the county wherein he is summoned and resides; it is sufficient to qualify him to act, that he owns such interest in lands situated in any other county in this State.

4. SAME: SAME.—A person, who is in possession of land under a title bond, conditioned that the obligor will convey the title in fee, upon payment of the purchase-money, has, before the purchase-money is paid, such an interest in the land as will qualify him to act as a juror, in a case where the law requires the jury to be composed of freeholders.

5. SHERIFF: CLERK: EFFECT OF RETURN "DULY EXECUTED" AND OF ENTRY "THAT THE JURY WERE DULY SWORN."—The return by the sheriff of "duly excuted," on process committed to his hands, and the entry by the clerk "that the jury were duly empanelled and sworn," have constantly been held to be conclusive, of the due execution of the process, and the due empanelling and swearing of the jury, upon the presumption that the officer had properly discharged his duty; and hence, when the sheriff returned, that a jury of inquest summoned by him to assess damages accruing to the owner of land, by reason of the location of a railroad thereon, "were duly empanelled and sworn according to law, *to discharge their duties,*" it was held, that the return must be construed as a statement that the proper oath was administered to the jury, and not as a recital of the substance of the oath administered, and therefore that it appeared that the jury were properly sworn.

6. JUDGMENT: NOTICE: PROCEEDINGS IN REM.—As a general principle, notice, either actual or constructive, to the party to be affected by a judgment, is essential to its validity, but this rule does not apply to proceedings *in rem*, or to suits in the nature of proceedings *in rem:* In such cases, the seizure of the thing which is the subject-matter of litigation and on which the judgment is to operate, gives the court a jurisdiction over the persons of those interested, and is considered as notice to them; and judgments rendered in such proceedings are held valid, upon a principle of public policy, against all persons interested, whether they had actual notice of the proceedings or not.

7. SAME: CASE IN JUDGMENT.—The charter of New Orleans, Jackson, and Great Northern Railroad Company, provides, that the jury summoned to assess damages to the owner, for the appropriation of his land to the use of the road, shall assemble upon the premises and examine the land and mark out the road-bed before rendering their verdict; but it makes no provision for any other notice to the owner. This action of the jury is strictly a proceeding *in rem,* and the validity of their verdict is governed by the principles of law applicable to such cases. (See *Stewart* v. *The Board of Police of Hinds Co.,* 25 Miss. R. 479.)

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

*Freeman* and *Dixon,* for plaintiff in error,
Cited 1 Shelford on Railways, 458; 13 Conn. R. 110; 16

Ohio R. 479; 13 Barb. R. 169; *Walker* v. *Boston and Maine R. R. Co.*, 3 Cushing's R. 1; 19 Wend. 651; 1 N. J. R. 442; 2 Am. R.R. Cases 286; 2 Wharton R. 277.

*D. Shelton*, for defendant in error,
Cited Hutch. Dig. 879, § 133; 2 Bl. Com. 104.

SMITH, C. J., delivered the opinion of the court.

This case in its inception, was a proceeding under the provisions of the charter of the New Orleans, Jackson, and Great Northern Railroad Company, to value and assess the damages to the owner of certain land required for the road-way of the company through the county of Hinds.

It appears that a jury of inquest of damages, summoned under the provisions of the charter of said company, assembled upon the land of L. B. Hemphill, who, having been duly empanelled and sworn, proceeded to examine, value, and assess the damages to the said Hemphill, consequent upon the location of the road, and the use and occupation of the land required by the company. That, having agreed upon the amount of the damages, their verdict was reduced to writing and signed by the jurors; and that on the 16th day of April, 1857, the verdict was filed and docketed in the office of the Clerk for the Circuit Court of said county.

At the succeeding term of the court, Hemphill appeared and showed cause against the confirmation of the verdict, and entered his motion to set aside the same. The motion was sustained; whereupon the company excepted, and sued out this writ of error.

When the cause was submitted, a motion to dismiss the writ of error, then pending, was also submitted. The subject, therefore, first to be examined is the question arising on that motion.

Want of jurisdiction was the ground taken in support of the motion. And in the argument it was contended, that, the procedure authorized by the charter of the company for the valuation and appropriation of land for the use of the road, is not in its character a judicial proceeding, but a mere commission *in pais*, in which the function of the jury was not to determine a matter at issue between parties litigant, but simply to ascertain the value of the land, and to assess the damages to the owner, consequent upon the location of

the road and the appropriation of his property: and for that reason the Circuit Court could not take judicial cognizance of the matter. And it was contended, on the other hand, if the proceedings were to be considered judicial in their nature, the whole proceeding was illegal and void; inasmuch, as it is contended there was no notice, either actual or constructive, to the party affected by the actions of the jury.

The statute provides that the inquest shall be reduced to writing, signed by the respective jurors, and be returned by the sheriff to the office of the Circuit Court of the county in which the land lies, and shall be confirmed by said court at its next term, if no sufficient cause to the contrary be shown. From this it is seen that the inquest or finding of the jury has no validity whatever, unless it shall be confirmed by judgment of the Circuit Court. By whatever terms, therefore, we may choose to characterize the proceeding, whether we regard it a commission to be executed *in pais*, or as judicial in its character, it may with strict propriety be considered as the process by which the subject is brought within the cognizance of the Circuit Court. And in regard to the other branch of the objection, it is sufficient to state that the argument based upon the alleged invalidity of the inquest, arising from the supposed want of notice, might with propriety have been addressed to the Circuit Court in support of the motion to set it aside. But manifestly it is no ground for dismissing the writ of error, which is prosecuted for the purpose of reversing the judgment entered on the motion.

The remaining ground for the motion is likewise untenable. The act does not declare in terms that the judgment in these cases, either affirming or setting aside the inquest, shall be final. It is, in fact, perfectly silent on the subject. Judgments of the Circuit Courts, in such cases, are left to stand precisely on the same footing with all other judgments of those courts. And hence, there can be no doubt, that the aggrieved party is entitled to the remedy supplied by the general law on the subject of writs of error.

Several causes were assigned in support of the motion in the court below, to set aside the inquisition. Those which are entitled to consideration, and which are most confidently relied on, are the following, to wit: 1. That the jury of inquest was not composed

of freeholders in the county of Hinds; 2. That the oath required by law was not administered to the jury; and 3. The defendant had no notice.

The first objection applies to Casten and Dally, two of the jurors. In reference to the former, we have no doubt that he was a freeholder within the State of Mississippi, but it is not pretended that he claimed or held a freehold estate in lands situated in Hinds county. And it is insisted, that according to the true legal construction of the charter, persons only who held a freehold estate in land situated in Hinds county, were competent to act as jurors in the case under consideration.

The provision of the statute on which this question arises, is in the following words, " That it shall be lawful on application in writing made to any justice of the peace, for such justice to issue his warrant to the sheriff to summon a jury of twelve freeholders, who, when assembled, &c." This language is too plain to admit of doubt that, according to its literal interpretation, the sheriff is not restricted to persons who are freeholders of the county in which the land lies. And it will not be questioned that persons who could be legally summoned by the sheriff, would be competent to act as jurors. But in all questions upon the construction of statutes, the main object is to ascertain the true meaning and intention of the Legislature. And where, when from a due consideration of the subject-matter and the object of a statute, such intention is manifest, courts uniformly give effect to it, though not sanctioned by the literal interpretation. And here it is insisted that when we look at the objects present to the legislative mind, and the motives which controlled its action, it is clear that it was intended that freeholders of the county only should act in these cases.

Proceedings such as this are of an extraordinary character. The State in virtue of the right of eminent domain, in effect undertakes to compel the citizen to make a transfer of his property, not conceding to him the privilege of stipulating for the price which he will accept, but is understood to guarantee that he shall first be paid a just and full equivalent for his property. Under this view it is well contended, that it must have intended to provide an impartial tribunal, well acquainted with the character and quality of the property, the value of which it would be its duty to estimate ; and

hence, it is argued that freeholders of the county were intended, and not persons who might own real property in any county of the State, for the reason that the former would be the better judges of the value of such property.    But is such conclusion just ?    Is it clear that, as a general rule, a resident of Hinds, for instance, who owned lands in Madison, Rankin, or Copiah, would be less qualified to judge of the value of lands in Hinds than a citizen and land-owner of that county ?    Or, that the probabilities are stronger in favor of the greater fairness and impartiality of the latter ?    We may answer, with confidence, that these inquiries are not so plain either way, as to warrant the assumption that the Legislature were influenced by such considerations.    Certainly upon such supposi-tions, we would not be authorized in rejecting the plain literal meaning of the language, and in adding a condition which the Legis-lature did not see proper to insert.

Dally, the other juror to whom exception was applied, was in possession of land situated in Hinds, under a contract of purchase; holding a bond for titles; but not having paid all of the purchase-money.

An estate in land is the interest which the tenant has therein; and any person holding an interest in land for years, for life, or any greater estate of freehold is an owner.    Hill. Ab. 20.    Here there can be no doubt that Dally is to be regarded as the owner of the land: and the question whether, in the meaning of the charter, he is to be considered a freeholder, or not, must be determined by the quantity of the interest which he holds therein, and not by the quality, for it is by its quantity that the interest which a man holds in land is characterized as an estate of freehold or otherwise.

A freehold was formerly characterized as an estate which could only be created by *livery of seisin,* or as the possession of the soil by a freeman; a freeman being one who could go where he pleased. 2 Bl. Com. 80.    But these definitions are not applicable in Missis-sippi.    All claim to be freemen, and *livery of seisin* is dispensed with, by the express language or necessary implication of our statutory provisions.    Under our law, a freehold may be defined as an estate of inheritance, or for life, in real property.    And such an interest is incapable of being transferred from one to another, unless the conveyance be declared by writing, sealed and delivered.    Hutch.

Code, 605, sec. 1.   It is manifest, therefore, that Dally, in virtue of the bond for titles, executed to him by his vendor, was not vested with the legal title to the freehold ; but it is, nevertheless, certain that he acquired by the execution of the title-bond and the delivery of the possession, an interest or estate in the land which was clearly not that of a tenant at will or for years, but a greater interest. He held a property, or, as it has been quaintly expressed, " a time in the land," not limited by a definite and fixed period, beyond which it could not continue.   And upon payment of the purchase-money, according to the settled doctrine of this court, he would, for many purposes, be considered the owner of the fee.   Hence the conclusion is evident, that if the estate or interest which he held in the land is to be characterized by the quantity of that interest, rather than by its quality, it was of a freehold character.   And though, not admitting, in the technical meaning of the term, that it was a freehold, we do not feel authorized to say that, according to the true intent and spirit of the provision he was incompetent to act as a juror.

The next ground assumed in defence of the judgment is, that the oath prescribed by law was not administered to the jury.

The return of " duly executed" to process committed to the sheriff, and an entry by the clerk that the jury were ." duly sworn according to law," have been, constantly held conclusive of the due execution of the process by the sheriff, and of the fact that the oath required by law was duly administered by the clerk ; the law, in these cases, presuming that the officer had discharged his duty.

Here the return is that the jury were " duly empanelled and sworn, according to law, to discharge their duties, &c."   Unless we. take this statement to be a description of the oath, and interpret it so as to make the sheriff return that he swore the jury to discharge their duty, and not that this oath was administered in due form, the objection is untenable.   But such a construction is clearly improper.   It would make the return false and contradictory.   For if the jury were " duly sworn according to law," which necessarily implies that the oath prescribed was administered to them, they were not, as contended, sworn simply to discharge their duties.

In prescribing the mode of procedure for the condemnation of land required in the construction of the road, the charter has

made no provision for notice to the owners. And the general law of the State contains no provision on the subject. In the case at bar, it is not pretended that the defendant in error had actual notice of the proceeding by which his land was appropriated to the company. This want of notice is the foundation of the last objection which we deem it proper to notice.

As a general principle, notice, either actual or constructive, to the party affected by the judgment of any court, is essential to its validity. But there is an exception to this rule, recognized at the common law, and by the jurisprudence of this State. This exception applies to the class of cases styled proceedings *in rem*, or suits in the nature of proceedings *in rem*. In these proceedings or suits, the judgments of the courts are conclusive against all persons interested in the subject-matter of the suit, whether they have had actual notice of the proceeding or not. And their validity and conclusiveness rests upon a principle of public policy. In these cases, it is considered that jurisdiction of the parties in interest is acquired by a seizure of the thing which is the subject-matter of litigation, and on which the judgment is to operate. The seizure of the thing is considered notice to all parties interested.

In *Stewart* v. *The Board of Police of Hinds County*, it was held by this court, that the proceedings of the Boards of Police of this State, condemning lands to be used as public highways, are strictly proceedings *in rem;* and that all orders made by them in relation thereto are to be governed by the principles applicable to such cases. 25 Miss. Rep. 479.

The proceedings of the Boards of Police had for the purposes stated in this case, are identical in their nature and character, with those prescribed by the charter of the company for the condemnation and appropriation of land required in the construction of the road. They are equally proceedings *in rem;* and we do not doubt that they were intended by the Legislature to be such, and to be governed by the rules and principles applicable in similar cases. As before remarked, the charter contains no provision in regard to notice. It is entirely silent, and no provision is made in any other act on the subject. It is evident, therefore, that the Legislature intended, in their proceedings, that no notice, except that which would arise from the assembling of the jury upon the premises,

making their examination and review, and marking out the road, should be given to the party interested. These proceedings of the jury in all similar cases are considered as constructive notice. In point of fact, in most cases, they would be actual notice to the owner of the land. And, as the inquest has no validity before confirmation by the Circuit Court, aggrieved parties have an ample opportunity of being heard.

According to this view of the subject, the alleged want of notice did not affect the legality and validity of the inquest, and hence constituted no ground for setting it aside.

Judgment reversed, and judgment ordered to be entered in this court affirming the inquest.

The same judgment will be entered in *New Orleans, Jackson, and Great Northern Railroad Co.* v. *L. Clements.*

HANDY, J., being interested as a stockholder of the Railroad Company, did not sit in these cases.