THE STATE OF IOWA, Appellant, v. GUS GRIMMELL, Appellee.

**Privileged Communication:** TRIAL FOR MURDER OF PATIENT: *Another physician may testify to examination of decedent* On trial for murder, Code, section 4608, providing that no physician or surgeon who obtains information by reason of his employment shall be allowed to disclose any confidential communication intrusted to him in his professional capacity, and necessary and proper to aid him, did not prevent a surgeon, who was called to attend deceased shortly before her death, from

testifying that she was suffering from wounds which he believed she had received in an attempt to perform a criminal operation.

**Appeal by State:** *County attorney may sign notice of appeal.* Code, sections 5448, 5449, allow the state an appeal in criminal cases, section 301 makes it the duty of the county attorney to appear for the state and county in all cases in the courts of his county in which the state or county is a party, and to notify the attorney-general of every appeal in criminal cases, and to deliver to him a prepared abstract; and section 208 makes it the duty of the attorney-general to prosecute all cases in the supreme court. *Held,* that the attorney-general had nothing to do with an appeal in a criminal case until it was perfected and that the county attorney properly took the appeal and gave the notice.

*Appeal from Greene District Court.*—HON. S. M. ELWOOD, Judge.

THURSDAY, DECEMBER 19, 1901.

THIS is an appeal from certain rulings of the trial court in the above cause, wherein defendant was accused of the crime of murder in the second degree, perpetrated, as is alleged, in an attempt to produce a miscarriage. A verdict of not guilty was directed, and the state appeals.—*Reversed.*

*Chas. W. Mullan,* Attorney-General, *Chas. A. Van Vleck,* Assistant Attorney-General, and *E. G. Albert,* County Attorney, for the State.

*Salinger & Korte* and *Rose & Henderson* for appellee.

DEEMER, J.—The notice of appeal was signed by E. G. Albert, county attorney; and it is argued that he had no authority to take the appeal, in the absence of authority from the board of supervisors of Greene county, and that, even with this authority, he had no right to take the appeal. The contention is that the attorney-general alone has the right to take and perfect an appeal in a criminal case. Code, section 5448, provides that either

the state or the defendant may appeal in a criminal case;
section 5449, that the appeal is perfected by the party or
his attorney serving notice on the adverse party, or his attor-
ney of record, of the taking of the appeal; and section 301
makes it the duty of the county attorney to appear for the
state and county in all cases in the courts of his county to
which the state or county is a party.  He is also required to
notify the attorney-general of every criminal case appealed
to the supreme court, and to prepare and deliver to him a
prepared abstract of the case.  Section 208 makes it the duty
of the attorney-general to prosecute and defend all cases in
the supreme court in which the state is a party or is inter-
ested.  Manifestly, the attorney-general has nothing to do
with a criminal case until it reaches this court.  While in
the district court the county attorney has sole charge of it,
and by section 301 the county attorney is expressly required
to furnish the attorney-general with an abstract in all cases
appealed to the supreme court.  This clearly indicates that
the county attorney, and he alone, may give notice of appeal
in a criminal case.  We have many times held that when
defendant appeals he must give notice to the county attor-
ney, and there is no more statutory authority for this than
there is for the county attorney giving notice when the state
is the appellant.  No doubt, when the case is appealed the
attorney-general obtains full control of it, but until the ap-
peal is perfected he has no authority in the matter.  *State
v. Fleming,* 13 Iowa, 443.  The board of supervisors has
no control over appeals in criminal cases brought within the
county, and the county attorney is not required to consult
it with reference to the taking of an appeal.  The motion
to dismiss is therefore overruled.

II.  It is claimed by the state that the crime was the
result of an abortion performed by defendant upon one Mrs.
Ed. Sherman.  After introducing evidence tending to show
that defendant performed an abortion, and that it was not
necessary to save life, the state offered one Dr. Enfield as

a witness, and proposed to prove by him the following state of facts: First. That from his experience and the teachings of the recognized medical authorities, there is no occasion in which it is right or proper to use instruments or a stick in the vagina or private parts or uterus of a woman, where the difficulty or condition under which she is then laboring is a case of amenorrhea or stoppage of the menstrual flow caused by a cold. Second. That, on or about Wednesday of the week in which Mrs. Ed. Sherman died,— she being the woman on whom it is alleged the defendant produced the abortion as charged in the indictment herein, —he was called by the husband of the deceased woman, Ed. Sherman, to make an examination of the said Mrs. Ed. Sherman, and found the following conditions: · That she was then suffering from a virulent type of puerperal infection, to wit, septicæmia, which in the condition here found is purely and only a wound infection generated by poison germs introduced from external sources into an open wound; that such germs were carried in by instruments, or by the examining finger of the person in charge; that said septicæmia was of a virulent type, and had reached the point where it had affected the whole system, she having then a high temperature, and being physically very weak; that the private parts and the whole pelvic region and contents were highly inflamed and swollen; that, in his opinion as a physician, this condition was brought about by an attempt to produce a miscarriage; that at the time such miscarriage was attempted the said Mrs. Ed. Sherman was pregnant, and that he found nothing to indicate that a miscarriage had been necessary; that her death was caused by said puerperal infection produced by wounds in the attempt to produce said miscarriage. To this defendant objected on the ground, among others, that it was privileged, under section 4608 of the Code, which reads as follows: "No physician or surgeon * * * who obtains information by reason of his employment * * * shall be allowed,

in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to perform the functions of his office according to the usual course of practice.   *   *   *   Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred." Such communications were not privileged at common law, but in a large number of states the rule has been changed by statutory enactments similar to the one we have quoted. Naturally these statutes have frequently been before the courts for construction,—especially the paragraph relating to waiver when the patient is deceased. These questions most frequently arise where it is sought to introduce the evidence of doctors in probate proceedings as to the mental capacity of his late patient, or in proceedings on policies of insurance, or in proceedings to recover for the killing of the deceased. There is a want of harmony in the decisions on these questions, as will be observed from reading some of our late cases. See *Shuman v. Supreme Lodge,* 110 Iowa, 483; *Winters v. Winters,* 102 Iowa, 56; *Denning v. Butcher,* 91 Iowa, 425; *Westover v. Insurance Co.,* 99 N. Y. 57 (1 N. E. Rep. 104, 52 Am. Rep. 1); *Morris v. Morris,* 119 Ind. 343 (21 N. E. Rep. 918). But we need not go into this matter further than to demonstrate that even in civil cases we have extended the language of the statute, and expressly held that the prohibition may be waived, either by the testator, or, after his death, by those who stand for him. *Denning v. Butcher, supra.* This, as will be observed, is a criminal case, and it surely will not do to hold that a statute intended to protect a patient should operate as a shield for one who is charged with murder. Such a construction, while perhaps technically correct, is evidently so foreign to the purpose and object of the act, and so subversive of public justice, that it ought not to be adopted, except for the most imperative reasons. The safety

·of the public is the supreme law of the commonwealth, and we do not think the legislature, in passing the act in question, intended it to operate as a barrier to the enforcement of the criminal laws of the state. If the patient were alive, perhaps no one but she could waive the prohibition. But in this case she is dead and unable to speak. If in a civil ·case her representative may waive the prohibition, we see no good reason for saying that in a criminal one the prohibition is absolute. The purpose of the statute, as we have ·said, is to protect the patient, and not to shield one who feloniously takes his life. The authorities uniformly support ‑this position. *Hauk v. State,* 148 Ind. Sup. 238 (46 N. E. Rep. 127) ; *Pierson v. People,* 79 N. Y. 426 (35 Am. Rep. 524) ; *People v. Murphy,* 101 N. Y. 126 (4 N. E. Rep. 326) ; *People v. Harris,* 136 N. Y. 424 (33 N. E. Rep. 65) ; Un‑derhill, Criminal Evidence, section 351.

Some other points are discussed by counsel, but they are not of enough importance to demand separate consideration.

In order to establish the correct rule of law in such ·cases, we disapprove of the holding of the trial court regarding the admission of the evidence of the physician; and while there cannot, of course, be a new trial, we are con‑strained to reverse the judgment.—REVERSED.