George Thrasher v. State of Nebraska.

FILED OCTOBER 18, 1912.    No. 17,503.

1. Rape: EVIDENCE. The unquestioned proof that a female child of the age of 17 years was pregnant and dies from the effects of an abortion is sufficient evidence of the fact that some one had had sexual intercourse with her at the time of age which is prohibited by statute.

2. ———: ———. The evidence by which it was sought to prove the guilt of the defendant of the crime of statutory rape was largely circumstantial, although not wholly so. The facts testified to are examined and found to be sufficient to be submitted to the trial jury.

3. ———: ———: PRIVILEGED COMMUNICATIONS. In a trial of a charge of statutory rape, where the female child died from the effects of· an abortion criminally produced, evidence by the physicians who attended her in her last illness, and who were present at the time of the miscarriage, as to what they discovered upon an examination of the patient during such attendance · is not prohibited by the law of this state.

4. Instructions, both given and refused, are examined, though not set out in the opinion, and no reversible error is found in them.

5. Criminal Law: NEW TRIAL: DISCRETION OF COURT. Where misconduct on the part of a bailiff in charge of a trial jury during their deliberations is alleged in a motion for a new trial, and the issue is submitted upon conflicting affidavits, the decision of the district court thereon will not be reversed unless found to be clearly wrong.

ERROR to the district court for Scott's Bluff county: RALPH W. HOBART, JUDGE. *Affirmed.*

*M. S. McIninch* and *L. L. Raymond,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

REESE, C. J.

An information was filed in the district court for Scott's Bluff county, accusing plaintiff in error, George Thrasher, who will be referred to as the defendant, of the crime of statutory rape committed upon one Edith Perry on the 15th day of April, 1911, in said county; the said Edith Perry being at said time but 16 years of age and not previously unchaste. A plea of not guilty was duly entered and a jury trial had which resulted in a verdict of guilty. A motion for a new trial was filed and overruled, when defendant was sentenced to imprisonment in the penitentiary for the term of eight years. He alleges error, and brings the case to this court for review.

The evidence shows that on or about the 25th day of August, 1911, the said Edith Perry died from the effects of an abortion, criminally produced, and that at the time of her decease she was 17 years of age. These facts being undisputed, it is settled beyond controversy that some one had illicit relations with her at an unlawful age at or about the time alleged. The fact that defendant was over 18 years of age at the time of the alleged intercourse was also established. So far as the evidence is concerned, the case is narrowed down to the one question of the identity of defendant as the guilty person.

Upon the trial he became a witness in his own behalf, and testified that he had never at any time had sexual relations with the decedent. She being dead, of course her testimony could not be had. The evidence on the part of the state was therefore largely circumstantial. There were many phases of the case in which the evidence was conflicting. These conflicts were, in almost all instances,

between the testimony of the state's witnesses and that of defendant, consisting in the main of his denial of their statements as to his conversations and conduct. The former personal chastity of the decedent was not directly attacked, and the evidence in its support was sufficient for its submission to the jury. The evidence tended to prove that for perhaps a year or more defendant and Miss Perry were often together, he waiting upon her as a close associate, if not a suitor; that he frequently visited her at her home, on one or two occasions remaining with her in the parlor or sitting room all night; that they were often seen upon the streets of the village where they resided, both by day and night, and at one time were in the store, where defendant was employed as a clerk, after night and without a light. She was employed in a hotel, where her last sickness came upon her, and from where she was removed to her home a short time before her death. While she was sick at the hotel he visited her and appeared to be interested in her case and in the physicians employed. One physician testified that some six weeks before her death defendant applied to him for "medicine to cause a girl to come around;" that he said to the physician the girl was pregnant, and the request was refused. The father of the decedent testified that at the time of the arrest of defendant they had a conversation in which defendant requested the father to help him out of his trouble, and in which he admitted the illicit relations, but denied having taken any part in causing the abortion which resulted in the death of Edith. There was other evidence of a more or less criminating character, but which we need not recount. Practically all of the alleged admissions and statements were denied by defendant upon the witness-stand, but the matter of the truth or falsity of the testimony was for decision by the jury, and with that feature of the case we can have nothing to do; the evidence being sufficient to submit to them.

The physicians who attended the decedent in her last sickness were called as witnesses, and testified as to her

condition at that time and the cause of her death. Their testimony was objected to on the ground that it violated the law of privileged communications. The contention is probably based on the provisions of sections 333 and 334 of the code, which prohibit the disclosure of confidential communications to a physician, etc. The physicians testified to the physical facts discovered by them in their treatment of the decedent, and as to their course of treatment. We had never understood that the rule extended so far as is claimed by defendant. The testimony had no reference to him, and there was nothing for him to waive. The prohibitions of the section were not in his "favor." So far as we are aware, the provisions of the section have never been held to apply to cases of this kind. No authorities so holding are cited. Communications between patient and physician were not privileged at common law, but depend alone upon the statute. It is to be applied only as between them, and is for the protection of the patient. 1 Wharton, Criminal Evidence (10th ed.) sec. 516; *Hauk v. State,* 148 Ind. 238, 260; *Boyle v. Northwestern Mutual Relief Ass'n,* 95 Wis. 312, 322; *Pierson v. People,* 79 N. Y. 424, 433. In Underhill, Criminal Evidence (2d ed.) sec. 180, it is said: "A construction, which would operate to convert a statutory provision, intended to protect a patient from damaging or objectionable disclosure, into a protection for a person accused of the murder of the patient, cannot be admitted, nor can we believe that such was the legislative intent"—citing *People v. Harris,* 136 N. Y. 423; *Hauk v. State,* 148 Ind. 238. We are unable to see that the same class of evidence is inadmissible in cases of this kind. There was no error in the admission of the physicians' testimony.

Some objection is made to the action of the court in refusing to give the jury certain instructions requested by defendant, and in giving instructions by the court upon its own motion. We have examined all with care, and are unable to detect any error in the matters named. The principles involved in the instructions refused were suffi-

ciently included in those given, and we find no prejudicial error in any instructions given and complained of. We have examined all instructions, both given and refused, and are persuaded that the cause was fairly and fully submitted by the instructions given. An analysis of each would extend this opinion to an unwarrantable length without the accomplishment of any compensating results.

Upon the close of the state's evidence, and also after the evidence had all been given, the defendant moved the court for a directed verdict in his favor. The motions were both overruled, and to which defendant excepted. The action of the court thereon is now assigned as error. Since our conclusion upon the whole case necessarily covers the questions presented by the motions, they will not be specifically noticed nor separately discussed.

Complaint is made of the alleged action of the bailiff in charge of the jurors during their deliberations. It is claimed by the state that the affidavits upon which the matter was submitted to the court are not preserved in the bill of exceptions, although set out in the abstract. We do not pass upon the question of their preservation, for the reason that, were the facts as stated in defendant's affidavits true, we would hesitate to set the verdict aside on that ground alone. But they are contradicted by other affidavits, thus presenting a question of fact, and we cannot say that the decision of the court thereon was wrong.

With a full appreciation of the importance of this case to defendant, we have examined the evidence adduced upon the trial, and are satisfied that the questions presented were properly submitted to the jury and were for their determination.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.