DAVENPORT *v.* STATE.*

(In Banc.  Feb. 1, 1926.  Suggestion of Error Overruled May 24, 1926.)

[108 So. 433.  No. 25229.]

WITNESSES.  *In trial for unlawful killing admitting testimony of physician, who attended deceased, with reference to condition of his wounds, held not reversible error (Code 1906, section 3695, Hemingway's Code, section 6380).*

Where a person is on trial for the unlawful killing of another, it is not reversible error, under section 3695, Code of 1906 (Hemingway's Code, section 6380), to admit the testimony of the

physician who attended the deceased with reference to the condition of his wounds.

McGowen, J., Smith, C. J., and Cook, J., dissenting.

*Corpus Juris-Cyc References:    Statutes, 36Cyc, p. 1108, n. 46. Witnesses, 40Cyc, p. 2389, n. 85, 86, 87, 88, 89; p. 2394, n. 32, 33, 34, 35, 36; p. 2395, n. 37; Information acquired while attending person in professional capacity privileged under statute, ,see 28 R.C.L. 533; 5 R.C.L. Supp. 1544.

APPEAL from circuit court of Humphreys county.
HON. S. F. Davis, Judge.

Frank Davenport was convicted of manslaughter, and he appeals. Affirmed.

*Dudley Reed* and *C. M. Murphey,* for appellant.

*The expert testimony of Doctors Gamble and Higdon was privileged.* The deceased was the patient and under the charge of these two physicians. By their testimony alone the proximate cause of the death of deceased was proved. The court erred in admitting the testimony of these two physicians over the. objection of appellant. See section 3695, Code of 1906 (section 6380, Hemingway's Code); *McCaw* v. *Turner,* 88 So. 705.

Our contention here is that upon the death of the victim the lips of his physicians are sealed and that they cannot be allowed to disclose information coming to them in their professional capacity while the relation of physician and patient exists.

That the privilege was applicable in criminal as well as . civil. cases under the New. York statute, somewhat similar to ours, was held in *People* v. *Murphy,* 101 N. Y. 126 Am. Rep. 661. For the general rule see 40 Cyc., p. 2389. Professor Wigmore . recognizes that the privilege is applicable in criminal as well as in civil cases. 4 Wigmore, 3356.

This court is not the arbiter nor the judge of whether our statute is wise or ill-advised. The legislature has adopted it and it remains but for the court to give it

effect. - This statute does not need any construction, it needs only to be enforced. *Hamner* v. *Lumber Co.,* 100 Miss. 349 at 417; *State* v. *Trailor,* 100 Miss. 558.

*J. L. Byrd,* Assistant Attorney-General, for the state.

Our court has never, so far as we have been able to determine, passed upon the question as to whether or not the privilege communication statute (section 3695, Code of 1906, section 6380, Hemingway's Code) applies in the prosecution of a person for a crime where the physician testifies about the condition, etc., of the victim of that crime.

The first question which we think presents itself is whether or not the appellant had a right to raise that question. As far as he was concerned no right of his was violated. He had no connection with the doctors and their patients. He has no interest in seeing the statute enforced except to the extent that it probably would close the mouths of witnesses against him in the case. We submit that the doctors did not claim the privilege, the court did not claim the privilege for them, and we do not believe that the appellant had a right to claim it inasmuch as he had no interest whatever in the prohibition of the statute. 28 R. C. L., p. 533. A leading case is *Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524, a murder case wherein the defendant was charged with having produced death by the administration of arsenic. A physician was called to testify as to the condition of the patient, etc., just as in the present case. An objection was made because of a prohibition of a statute similar to our statute. The objection was overruled by the court and the case affirmed on appeal. See, also, *Thrasher* v. *State,* 92 Neb. 110, 138 N. W. 120.

Both of these cases hold that the statute was never intended to bar a physician from testifying as to the condition of a person who was a victim of a crime, and to so hold would, we submit, be utterly at variance with

all the principles of reason, justice, and right. It has
been the custom in this state from time immemorial to in-
troduce the doctor in homicide cases, and this is the first
time it has ever been questioned, and the court has
never held that this testimony was incompetent. We sub-
mit, therefore, that in view of the foregoing authorities,
the objections of appellant to the doctor's testimony were
not well taken and the court was correct in overruling
the objections; and in conclusion, we refer the court to
1 Wharton's Criminal Evidence (10 Ed.), p. 1064; *State
v. Grimmell* (Iowa), 88 N. W. 342; Underhill on Crim-
inal Evidence (3 Ed.), par. 298; *Hawk v. State* (Indiana),
46 N. E. 127.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Frank Davenport, was indicted for the
murder of one Artie Smith, and was convicted of man-
slaughter, sentenced to two years in the state peniten-
tiary, from which he prosecutes this appeal.

The principal assignment of error is the admission
of the testimony of the physicians who attended the de-
ceased after he was wounded. The testimony of these
physicians as to the nature of the wound and the cause
of the death, the treatment given, etc., is objected to on
the ground that it was inadmissible because privileged
under section 3695, Code of 1906 (Hemingway's Code,
section 6380), which reads as follows:

"All communications made to a physician or surgeon
by a patient under his charge or by one seeking profes-
sional advice, are hereby declared to be privileged, and
such physician or surgeon shall not be required to dis-
close the same in any legal proceeding, except at the in-
stance of the patient."

The particulars of the killing were testified to by other
witnesses and the physicians who attended him after
the cutting was done.

It is the opinion of Judges ANDERSON and HOLDEN that this statute does not apply in criminal cases, and for that reason there was no error in admitting the evidence. It is the opinion of myself that the appellant is not entitled to raise the objection, and that, if it was error to admit the evidence, it is error of which he cannot complain, and therefore the judgment of the court below should not be reversed. It is the opinion of Judges McGOWEN, COOK, and SMITH that the evidence was privileged, and that it was error to admit it, that the statute applies to all kinds of legal proceedings, including criminal prosecutions, and that the judgment of conviction should be reversed because of the error in admitting this evidence.

In 28 R. C. L., p. 533, section 122, it is stated: "Nor can the privilege be invoked by one accused of crime as to information respecting the condition of his victim."

In 40 Cyc., p. 2394, ·par. (b), it is stated: "The privilege is that of the client or patient, and an objection to testimony as violating such privilege may be made by him, or, after his death, by his personal representative, and it has also been held that the objection may be raised by his assignee. But no other person has the right to such testimony, even after the death of the client or patient"—citing *Scott* v. *Harris,* 113 Ill. 447; *Stoppel* v. *Woolner,* 4 Ohio Dec. (Reprint) 489, 2 Cleve. Law Rep. 252; Id., 7 Ohio Dec. (Reprint) 643; *McNulty's Appeal,* 135 Pa. 210, 19 A. 936; *Smith* v. *Boatman Saving Bank,* 1 Tex. Civ. App. 115, 20 S. W. 1119; *In re Hunt,* 122 Wis. 460, 100 N. W. 874; 50 Cent. Digest, tit. "Witnesses," section 780.

In *Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524, a murder case, wherein the defendant was charged with having produced death by administering arsenic, a physician was called to testify as to the condition of the patient, and objection was made because of the prohibition of a statute similar to our statute. The objection was overruled by the court, and this ruling was as-

signed for error. In the course of its opinion, the court said:

"The plain purpose of this statute, as in substance before stated, was to enable a patient to make known a condition to his physician without the danger of any disclosure by him which would annoy the feelings, damage the character, or impair the standing of the patient while living, or disgrace his memory when dead. It could have no other purpose. But we do not think it expedient at this time, to endeavor to lay down any general rule applicable to all cases, limiting the apparent scope of this statute. We are quite satisfied with the reasoning upon it of Judge TALCOTT, in his able opinion delivered at the General Term of the supreme court, and we agree with him 'that the purpose for which the aid of this statute is invoked, in this case, is so utterly foreign to the purposes and objects of the act, and so diametrically opposed to any intention which the legislature can be supposed to have had in the enactment, so contrary to and inconsistent with its spirit, which most clearly intended to protect the patient and not to shield one who is charged with his murder, that in such a case the statute is not to be so construed as to be used as a weapon of defense to the party so charged, instead of a protection to his victim.' This objection was therefore not well taken.''

In *Thrasher* v. *State,* 92 Neb. 110, 138 N. W. 120, Ann. Cas. 1913E, 882, involving a similar statute and contention, the court said:

"The physicians who attended the decedent in her last sickness were called as witnesses, and testified as to her condition at that time and the cause of her death. Their testimony was objected to on the ground that it violated the law of privileged communications. The contention is probably based on the provisions of sections 333 and 334 of the Code, which prohibit the disclosure of confidential communications to a physician, etc. The physicians testified to the physical facts discovered by them

in their treatment of the decedent, and as to their course of treatment. We had never understood that the rule extended so far as is claimed by defendant. The testimony had no reference to him, and there was nothing for him to waive. The prohibitions of the section were not in his 'favor.' So far as we are aware, the provisions of the section have never been held to apply to cases of this kind. No authorities so holding are cited. Communications between patient and physician were not privileged at common law, but depend alone upon the statute. It is to be applied only as between them, and is for the protection of the patient. 1 Wharton, Criminal Evidence (10 Ed.), section 516; *Hauk* v. *State,* 148 Ind. 238, 260 (46 N. E. 127, 47 N. E. 465); *Boyle* v. *Northwestern Mutual Relief Ass'n,* 95 Wis. 312, 322 (70 N. W. 351); *Pierson* v. *People,* 79 N. Y. 424, 433 (35 Am. Rep. 524). In Underhill, Criminal Evidence (2 Ed.), section 180, it is said: 'A construction, which would operate to convert a statutory provision, intended to protect a patient from damaging or objectionable disclosure, into a protection for a person accused of the murder of the patient, cannot be admitted, nor can we believe that such was the legislative intent'—citing *People* v. *Harris,* 136 N. Y. 423 (33 N. E. 65); *Hauk* v. *State,* 148 Ind. 238 (46 N. E. 127, 47 N. E. 465). We are unable to see that the same class of evidence is inadmissible in cases of this kind. There was no error in the admission of the physician's testimony."

See, also, upon general subject, 23 Am. & Eng Ency. L., pp. 76, 83, and 871; 5 Wigmore's Evidence (2 Ed.), sections 2321 and 2386; 4 Wigmore's Evidence (2 Ed.), section 2196; 28 R. C. L., p. 542, section 132; 5 Miss. Digest, Ann., p. 262, section 306; 23 Am. & Eng. Ency. L., p. 95.

Coming to my personal view that the admission of evidence was harmless error, I desire to say that, in my opinion, the statute confers the privilege upon the patient in every kind of legal proceeding, and, wherever the pa-

tient's rights are affected or those deriving rights from the patient, it would be reversible error to admit the evidence, providing the evidence showed harmful results in the trial. I desire to call attention to the language of the statute that all communications to a physician or surgeon by a patient under his charge, or by one seek- ing professional advice, are hereby declared to be priv- ileged. The statute does not make the evidence incompe- tent. It is competent, but it cannot be introduced, be- cause the law has conferred the privilege upon the per- son in whose favor the privilege exists to keep it out or to admit it according to his desires. It is a matter over which he has full and complete control. If the deceased were living, and the state was prosecuting the appellant for assault with intent to murder, instead of murder, clearly the person assaulted may take the witness stand and testify about the matter, and could introduce the physician who attended him to show the nature and char- acter of the wound, where it would tend to show a dan- gerous assault, or tend to show a purposed striking near a vital organ. Manifestly the defendant on trial could not object to the evidence because it is not made incompe- tent and because he has no kind of privilege or protec- tion afforded by the statute. The statute intends merely to protect the patient from exposure by disclosures made to his physician or from evidence derived from such dis- closures. In other words, the defendant in the present case had no kind of rights growing out of the statute. It was not for him to be heard upon it. As to him, the evi- dence was competent and admissible, and no right of his was violated by the admission of the evidence. It is true that this court had held that the waiver died with the pa- tient, and that the court ought not to admit the evidence, but, if it does admit it, it is like any other evidence which does not in legal contemplation harm the litigant. This principle is illustrated by the cases of *Newcomb* v. *State,* 37 Miss. 383, 2 Mor. St. Cas. 1303, *Head* v. *State,* 44 Miss. 731, 2 Mor. St. Cas. 1700, *White* v. *State,* 52 Miss. 216,

where it was held that the right to decline to answer on the ground of self-incrimination is a privilege personal to the witness and that the party calling him cannot claim the privilege for him or in his behalf should he choose to waive it. See, also, *Decell* v. *Lewenthal,* 57 Miss. 331, 34 Am. Rep. 449; *Rocco* v. *State,* 37 Miss. 357, 2 Mor St. Cas. 1280. Consequently we cannot reverse the judgment for admitting such evidence.

There is no merit in the other assignments of error. *Calicoat* v. *State, (Strickland* v. *State),* 131 Miss. 169, 95 So. 318.

The judgment of the court below will therefore be affirmed.

*Affirmed.*

McGOWEN, J., (dissenting).

Appellant, Frank Davenport, was tried in the court below on an indictment for murder and convicted of manslaughter by the jury, sentenced by the court to serve two years in the state penitentiary, and in order for this dissent to be clearly understood, it is necessary to state that the physicians who attended the deceased, Artie Smith, while in the hospital, were permitted to testify as to all communications between the physicians and the decedent over the objection of the defendant.

The defendant objected to the testimony on the ground that the communications were privileged under section 6380, Hemingway's Code (section 3695, Code of 1906), which is as follows:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

The wound was inflicted with an ordinary pocket knife and the defendant claimed that the cutting was accident-

143 Miss.—9.

al, occurring in a tussle over a bottle of alcoholic rub. This testimony showed all the details of two major operations, one abdominal, and the other the amputation of his left leg just below the hip joint. In addition, there were four blood transfusions, and the testimony was to the effect that this wound was the proximate cause of his death.

In view of the harrowing details of the operations and blood transfusions as related by the physicians, there can be no doubt but that, under the facts in this case, this testimony actually was prejudicial to the interest of the defendant.

In this case we have an anomalous situation. Two of the judges of this court are of the opinion that this section does not render communications between a patient and his physician offered in criminal cases privileged. The writer of the main opinion does not, as we understand that opinion, entertain that view, but is of the opinion that no harm in a legal sense was done the defendant, and that he cannot object to the communications between his victim, the patient, and the physicians attending him, while three of the judges of this court concur in the belief that this statute is so plain, so unambiguous, and so clear as to its meaning and purpose as not to demand judicial construction, and that this court has already so decided that all communications between the patient and the physician are privileged in any legal proceeding unless waived by the patient.

In this situation the case is affirmed by a divided court, and the judgment of the lower court stands.

I do not think that the main opinion is in accord with the meaning, purpose, and intent of the statute. Nor is it in accord with the previous decisions of this court. Nor to my mind does it appear to be logical to thus put this statute "in the air" by judicial construction.

As we understand the main opinion, the effect of the holding illustrated would be this: If Davenport's brother had been a party to the crime here charged, and if a

severance had been granted, then, if the same physicians in the trial of this brother had claimed the privilege which it was their duty to claim under this statute, and the court had not permitted them to testify, and necessarily, on account of the failure to have the physician's testimony, this brother would have been acquitted. With the opposite ruling of the court on this question, the defendant here, with the testimony in, would be convicted. In other words, to put it plain, the main opinion holds that, if the physician claims the privilege, and the court sustains it, that action is not considered error by this court.

I do not think it safe to put the operation of the statute at the will and subject to the bent of mind of the physicians of this state, nor of the several circuit judges engaged in the trial of criminal cases, dependent upon the variant views and leanings of these judges. In the case of *Hamner* v. *Lumber Co.*, 100 Miss. 349, 56 So. 466, this language is used:

"A statute which is plain and unambiguous, clear and free from doubt, is its own interpreter, and in such cases it is not necessary to resort to any rule of construction in order to ascertain its meaning. It is not for the judiciary to determine the wisdom, but simply to enforce the statute as it is written, and leave the responsibility where it justly belongs—upon its creator, the legislature. All of these principles are but hornbook law, known and familiar to all who are mere infants in the school of law and in its primary and academic departments. When there is doubt or obscurity in a statute, one of the cardinal rules of construction is to ascertain the conditions of affairs at the time of its enactment, the evil to be avoided, and the necessary effect produced by the statute."

In the case of *State* v. *Traylor*, 100 Miss. 544, at page 558, 56 So. 521, 522, this court uses this language: "The court cannot create a law. Its sole power is to enforce the statute as written by the legislature. The court has no right to add anything to or take anything from a stat-

ute, where the meaning of the statute is clear. It is only in causes where the statute is ambiguous that any rule for the determination or construction of statutes can be resorted to.''

There is nothing ambiguous or open to construction in the words ''all communications,'' and ''patient and physician'' are definitely described. The power to waive this privilege is limited to and vested in the patient, and, when the patient dies, the lips of the physician are sealed. Whether we say that such testimony is incompetent, or that the witness is incompetent to testify, the testimony delivered by the physician, not at the instance of the patient, is in violation of the plain, unmistakable language and meaning of this statute. I do not think it will do to say that, when the court and the physician violate the plain provision of the statute in this manner, and thereby testimony prejudicial to the rights of the defendant is heard by the jury, no harm is done him, or that the statute is not in his favor. I venture the statement that this statute can only logically be construed in the light of our former decisions as being in favor of one person, and that person is the patient whose communications with his physician are involved.

If the legislature had intended to limit or modify the character of legal proceeding as civil or criminal, it certainly would not have used the words ''any legal proceeding,'' as no broader language could have been selected, I dare say. So that the failure to insert the word ''civil'' after the word ''any'' disposes of the idea that this statute applies to criminal cases.

In 40 Cyc., p. 2389, we find this rule: ''The rule of privilege applies, although the patient is not a party to the action in which a disclosure is sought, and is not confined to civil cases, but applies also in criminal cases, except where the prosecution is for causing the death of the patient.''

Also see *People* v. *Murphy,* 101 N. Y. 126, 4 N. E. 326, 54 Am. Rep. 661.

Bear in mind that the defendant in this case is not a physician being tried for causing the death of his patient, in which case of course the privilege could not be invoked.

In *Thompson* v. *Ish* (99 Mo. 160, 12 S. W. 510), 17 Am. St. Rep. 552 at page 570, in a footnote, it is held that the statute is applicable in criminal cases, as well as civil cases. We quote as follows:

"It is settled by the recent New York decisions that, under the statutes of the state, the only person who can waive the prohibition is the patient himself, from whom the physician acquired the information, and that after his death the prohibition cannot be waived by any one. *Westover* v. *Aetna L. Ins. Co.*, 99 N. Y. 56 (1 N. E. 104), 52 Am. Rep. 1; *Renihan* v. *Dennin,* 103 N. Y. 573 (9 N. E. 320), 57 Am. Rep. 770; *Loder* v. *Whelpley,* 111 N. Y. 239 (18 N. E. 874). In the case of *Renihan* v. *Dennin,* 103 N. Y. 573 ( 9 N. E. 320), 57 Am. Rep. 770, EARL, J., who delivered the opinion of the court, said: 'It is probably true that the statute, as we feel obliged to construe it, will work considerable mischief. In testamentary cases, where the contest relates to the competency of the testator, it will exclude evidence of physicians, which is generally the most important and decisive. In actions upon policies of life insurance, where the inquiry relates to the health and physical condition of the insured, it will exclude the most reliable and vital evidence which is absolutely needed for the ends of justice. But the remedy is with the legislature, and not with the courts.''

In 4 Wigmore on Evidence, p. 3356, we find the following:

"The privilege, in general, applies as well in criminal as in civil cases; unless the statute expressly limits it to the latter. But in two classes of instances the privilege, though apparently applicable, exhibits its inherent impropriety so plainly that courts have sometimes sought by main force, to set limits and prevent its evil effects,

namely, in cases where the physician is himself *a par-taker in the criminal transaction,* and in the cases where the physician has acted *on behalf of the victim* of a crime. Courts have chosen various methods, more or less reasonable, of escaping from the dilemma. All that can be said is that an ill-advised initial principle is sure to tempt judges, sooner or later, to do violence to it.''

Clearly Mr. Wigmore states the case when he says that courts sometimes have sought by main force to prevent its evil effects, and describes the situation in this case, although I am not at all criticizing the statute here under review. That is not my province as a judge. Whether a statute is ill-advised or wise is for the legislature to determine, and in my opinion the matters set forth in the main opinion might well have been considered by the legislature by inserting proper limitations, rather than have the courts tempted by judicial construction to insert into the statute extraneous views of what the statute should contain.

The statutes on this subject which I have examined do not contain the plain and unambiguous language employed by our legislature in this statute. After the New York court had held that a statute similar to ours applied to criminal as well as to civil cases, and that the right to waive existed only in the patient, the New York legislature in 1909 changed the law. The Missouri law contains no limitation as to the power to waive such as is in our statute. The Colorado statute (C. L., section 6563) is in these words:

''A physician or surgeon duly authorized to practice his profession under the laws of this state, . . . shall not, without the consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient.''

The Michigan statute (Comp. Laws, section 12550, subd. 62) is in this language: ''No person duly authorized to practice medicine or surgery shall be allowed to

disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon.''

This general observation applies to all these statutes mentioned, and that is, there is probably no clear limitation undertaken in the statute, and the statutes were passed in the light of decisions of other states holding that the privilege might be waived. In other words, by construction, the statutes could be held to contain an implied right in another to waive for the patient because passed in the light of the law as announced in other jurisdictions.

This court, construing this statute, in *Hamel* v. *Southern Railroad Co.*, 113 Miss. 344, 74 So. 276, said:

''In view of the plain meaning and purpose of the above statute, it was palpable error to permit this doctor to testify to these matters which are privileged communications, a disclosure of which cannot be required *in any legal proceeding except at the instance of the patient.*''

In *U. S. Fidelity & Guaranty Co.* v. *Hood,* 124 Miss. 548, 87 So. 115, 15 A. L. R. 605, the court cited the case of *Railroad* v. *Messina,* 109 Miss. 143, 67 So. 963, saying:

''The evidence of a physician as to knowledge gained by reason of his employment as such could not be disclosed without the consent of the patient; that the privilege *was for the benefit of the patient, and not of the physician.*''

In the *Hood case,* 124 Miss. at page 571, 87 So. at page 119, this court also said:

''But, whatever may have been the reason for the enactment of the statute, the statute expressly prohibits a physician from testifying without the consent of the patient. The evidence of a physician ought not to be received before the court, and it is error for the court to proceed upon the idea that the judge and the public

may hear the statement of the physician in such case, though it be excluded from the jury. In such case the question ought to be directed to ascertaining whether the physician has knowledge by reason of the relation of physician and patient, *and, if it was so acquired,* it ought to be excluded."

In *Sovereign Camp, W. O. W.* v. *Farmer,* 116 Miss. 626, 77 So. 655, this court said:

"The privilege created by section 3695, Code of 1906 (Hemingway's Code, section 6380), *is personal to the physician's patient,* and may be waived by him either before or at the trial," etc.

I can but emphasize this statement of the court that this privilege is personal to the patient and favors no other litigant. It has no regard for the parties litigant. It seeks to confer no benefits, nor to deprive any right to any litigant in the world save the patient. Its sole purpose is to preserve inviolate the most confidential relation of physician and patient. Even if we say that there is a *casus omissus* on the part of the legislature, and even if we say that the statute is unwise, which I do not say, it is not for the courts to supply this defect, if such there be.

This statute and other such statutes are supposed to be enacted out of motives and for purposes which flow from grounds of public policy. *Crisler* v. *Garland,* 11 Smedes & M. 136, 49 Am. Dec. 49; *Perkins* v. *Guy,* 55 Miss. 153, 30 Am. Rep. 510.

In my opinion, the rule sought to be announced in the main opinion springs from and arises out of other privileged communications arising under the common law, and not arising from a construction of a clear and unambiguous statute such as this.

In *McCaw* v. *Turner,* 126 Miss. 260, 88 So. 705, after reviewing the authorities with reference to this statute, Chief Justice SMITH for the court said:

"The statute in plain and unambiguous language limits the right to waive the privilege to the physician's pa--

tient, and the right must be so limited by the courts, unless the manifest reason and obvious purpose of the statute would be sacrificed by adhering to a literal interpretation of its language.''

I cannot say that the manifest reason and obvious purpose of the statute would be sacrificed in the instant case, because the briefs of counsel upon this question show the same attack made upon the enforcement of this statute as seems now to be adopted in the main opinion of this case. I think the law is plain, and does not call for further interpretation. As to whether or not harmful results will flow from an enforcement of the statute as written is a matter of the individual opinion of the judge, and most of that argument addresses itself to the legislative branch of the government rather than to the judicial department. I think the testimony in this case was most harmful to this defendant; that it most probably aided the state materially in securing a verdict at the hands of the jury. I think that the law should be settled by the courts of the land, and not be left to the caprice of the physician, or to the variant opinions of the several trial judges as to the construction of this statute.

If it is reversible error in one case to admit this testimony, then in all cases of the same character, it should likewise be reversible error.

I think the defendant is entitled to a reversal of his case and to a new trial, and whatever may be the matter with this statute, if anything, should be relegated to the proper governmental branch for its cure.

SMITH, C. J., and COOK, J., concur.

IN RESPONSE TO SUGGESTION OF ERROR.

ANDERSON, J.

The opinion handed down in this case on the former hearing merely stated in brief the views of the different members of the court without the reasons therefor. In response to the suggestion of error, I feel called upon

to give more fully the reasons controlling the conclusion reached by me.

As it appears to me, the members of the court holding that the statute involved applies to criminal prosecutions are sticking in the bark—they fail to go to the heart of the question. They are controlled by the letter of the statute; they cannot get away from that. The effect of their position is that, where the language of a statute is plain, it must be followed, regardless of consequences. That is not the law as declared by this court and numerous other courts. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392, involved the construction of a statute whose language was plain and unmistakable. The court held that the language of the statute was not controlling because it would thwart the intent of the legislature in the enactment of the statute. The authorities holding this view were referred to in the opinion and reviewed by the court. Among the authorities cited in that opinion is *In Reg.* v. *Clarence,* 22 Q. B. D. (Eng.) 65. It was said in that case by Lord COLERIDGE, in substance, that in the construction of a statute, if the apparent logical construction of its language leads to results which it is impossible to believe that those who framed the statute or those who passed it contemplated and from which the reasonable mind recoils, some other construction must be looked for by the courts. The opinion in the Kennington case also cited with approval *Board of Education* v. *Mobile & Ohio Railroad Co.,* 72 Miss. 236, 16 So. 489, in which the court held that the statute there involved said one thing and meant another, and gave the statute force according to its meaning and not according to its language. *Railroad Co.* v. *Hemphill,* 35 Miss. 17, and *Ingraham* v. *Speed,* 30 Miss. 410, are squarely in point on this proposition. They are also cited with approval in the Kennington case. And in addition, the opinion in the Kennington case cited 2 Lewis' Suth. Statutory Construction (2 Ed.), sections 488-490; 36 Cyc. 1108; 20

Cyc. 1272; and 14 Am. & Eng. Ency. of L. (2 Ed.), 1079 —all of which support the principle declared in the Kennington case. This same principle of statutory construction was involved in the case of *Parchman* v. *Mobile & Ohio R. R. Co.* (Miss.), 109 So. 665, the opinion in which is handed down at the same time this case goes down on suggestion of error. The court also held in the Parchman case that, although the language of the statute involved was unambiguous, it failed to embody the full meaning and intent of the legislature. In discussing the question, the court said:

"In construing a statute, courts are not always confined to the very language of the statute, even though that be plain. The real intention of the legislature must be sought and adopted in order to give effect to the statute; and this is true, even though it be necessary to go beyond the letter of the statute. Absurd and unthought of results will not be attributed to the legislature. If such results follow from the plain letter of the statute, if it can be reasonably done, some other construction of the statute must be found."

The question is, Which did the legislature intend should be the paramount policy in the administration of this statute, the protection of the patient from a damaging disclosure, or the effectual enforcement of the criminal laws for the protection of the public generally? Which of those two policies should be the paramount policy? If one should go down, which one should it be? In the enactment of the statute, did the legislature have in mind criminal as well as civil causes? In volume 1 of Wharton's Criminal Evidence (10 Ed.), p. 1064, in treating the subject of the admissibility in criminal cases of the evidence of the attending physician, the author says:

"But it does not cover information that would result in shielding a crime, and this is especially true where the physician himself may be implicated in the crime."

The supreme court of Iowa, in *State* v. *Grimmell*, 116 Iowa, 596, 88 N. W. 342, in discussing this character of statute said:

"This, as will be observed, is a criminal case, and it surely will not do to hold that a statute intended to protect the patient should operate as a shield for one who is charged with murder. Such a construction, while perhaps technically correct, is evidently so foreign to the purpose and object of the act, and so subversive of public justice, that it ought not to be adopted, except for the most imperative reasons. The safety of the public is the supreme law of the commonwealth, and we do not think the legislature, in passing the act in question, intended it to operate as a barrier to the enforcement of the criminal laws of the state."

Underhill on Criminal Evidence (3 Ed.), par. 298, in discussing the intent and purpose of such a statute, said:

"The statute was never intended as a defense for criminals. Its plain purpose is not to protect the murderers but to shield the memory of the dead. . . . A construction which would operate to convert a statutory provision intended to protect the patient from a damaging or objectionable disclosure into a protection for the person accused of the murder of the patient cannot be admitted, nor can we believe that such was the legislative intent."

The Indiana supreme court in *Hauk* v. *State*, 148 Ind. 238, 46 N. E. 127, 47 N. E. 465, in construing a statute having substantially the same purpose as ours, said:

"The rule declared by the statute, which forbids a physician to reveal in evidence matters discovered by him in the course of professional attendance or treatment of a patient, is intended to protect the latter, and not to shield one who is charged with perpetrating an unlawful act upon the patient. The statute cannot be so construed as to permit a party charged with crime to invoke it as a weapon of defense in his own favor, instead of its being used as a protection to his victim. This inter-

pretation, in our opinion, accords with reason, and is supported by authority.''

The statute involved has been the law of this state for a good many years. It is not known ever to have been invoked in a criminal prosecution before. It is certain that this is the first time the question has been before this court. Doubtless many criminal cases have arisen since the statute was adopted in which the question could have been raised. And probably the reason it never has been done is that the bench and bar of the· state have never thought of the statute as applying to criminal prosecutions. Such a history of a statute ought to have at least some weight in determining its purpose and meaning.

*Suggestion of error overruled.*

HOLDEN, J., concurs in the above views.