# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-01102-SCT

*FREDERICK COTTON A/K/A FREDRICK COTTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/92 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM E. GOODWIN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED III |
| DISTRICT ATTORNEY: | LAMPTON, DUNN, |
| NATURE OF THE CASE: | CRIMINAL - CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 5/9/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/96 |

### BEFORE DAN M. LEE, C.J., McRAE AND SMITH, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. Frederick Cotton appeals his conviction and seven year sentence for the crime of aggravated assault. Because the trial court erroneously allowed a discovery violation involving expert testimony concerning the mechanics of the firearm recovered from the defendant without the witness having been qualified or tendered as an expert, we must reverse and remand this case to the Circuit Court of Pike County for a new trial.

I.

¶2. On October 7, 1992, Frederick Cotton was indicted by the Grand Jury of Pike County for the offense of aggravated assault in violation of Miss. Code Ann. § 97-3-7 (1994). At trial on September 20, 1992, Cotton was convicted of the crime charged, and sentenced to seven years in the custody of the Mississippi Department of Corrections, six years to be served without the possibility of parole. The following issues raised in his appeal to this Court warrant discussion:

A. Did the trial court err in allowing the state to present the testimony of police Detective Jimmy Carruth concerning the attributes of the .45 caliber pistol?

B. Did the court err in allowing Dr. Tom Jeffcoat to testify concerning the medical condition of the alleged victim after the victim asserted his medical privilege?

C. Did the trial court err when it refused to dismiss the indictment for lack of a corpus delicti?

D. Did the court err when it allowed the state to call Maurice Ford, Chris Thomas, Jimmy Carruth and Dr. Tom Jeffcoat to the stand as rebuttal witnesses?

E. Did the state improperly present evidence of other crimes in an effort to slander the defendant?

II.

¶3. Detective Perry Ashley of the McComb Police Department was dispatched to the home of Martha Lee Cotton at 404 Evans drive on May 19, 1992. Clifton Dillon was found lying in the carport with a gunshot wound to his leg. Soon after an ambulance arrived, Martha Cotton's sons, Agent Kenny Cotton ("Agent Cotton") of the Mississippi Bureau of Narcotics and Frederick Cotton ("Cotton"), arrived on the scene. Agent Cotton was carrying a semi-automatic pistol which he turned over to Detective Ashley. His brother, Cotton, was arrested on charges of aggravated assault based on information related by Agent Cotton.

¶4. In a statement given to the police after being taken to the police station, Cotton claimed that Dillon stole $800 in cash from him. This resulted in a confrontation at Cotton's house on May 19, 1992. Cotton struck Dillon and demanded that he leave immediately, but Dillon returned a few minutes later. Cotton asked him to leave again and shot him as he ran out the door. Cotton maintained that he did not intend to shoot Dillon.

¶5. Agent Cotton said that he found Dillon with the injury to his leg before the police was dispatched to the scene. In response to Dillon's statements, Agent Cotton walked to his brother's house where Cotton admitted shooting Dillon. Agent Cotton then told his brother to get the gun and walk back to their mother's house. They both walked back to their mother's house where the gun was turned over to the police.

¶6. Dr. Thomas Jeffcoat, an orthopaedic surgeon, examined and treated Dillon on May 19, 1992 at the Southwest Mississippi Regional Medical Center. The the bullet had entered the outside part of the leg and exited the inside leaving a hole through the bone. Dillon indicated at the hospital that he accidentally shot himself when the gun fell out of his pocket. Jeffcoat then asked him again about the cause of the accident because the wound was not consistent with his story. Dillon finally admitted "some dude shot him." Jeffcoat said the wound would have been at a different angle had the gun fired from his pocket or when it hit the floor. The wound was consistent with someone having stood above Dillon and shot him as he lay on the ground.

¶7. Maurice Ford and Chris Thomas, two officers from the McComb Police Department, testified that while at the hospital, Dillon stated that Frederick Cotton was responsible for the shooting.

¶8. Dillon maintained at trial that he accidentally shot himself after he dropped the gun on the floor. He claimed to have borrowed the gun from Roy Lee Jackson only 30 minutes earlier. Dillon said that he was only trying to show the gun to Cotton. He also testified that the bullet entered the inside part of his leg and exited the outside.

¶9. Felicia McGaffney was at Cotton's house when Dillon arrived on May 19, 1992. She said that Cotton accused Dillon of stealing money, hit him with a crutch and ordered him to leave. Threatening to return,

Dillon ran out of the house. Cotton originally had approximately three thousand dollars stored in the house as a result of a settlement received from a car accident. Eight or nine hundred dollars of the money was actually stolen from him one night. McGaffney also claimed there had been "bad blood" between Cotton and Detective Ashley for some time prior to this incident.

¶10. Detective Jimmy Carruth testified that the weapon recovered by Detective Ashley was a Llama .45 semi-automatic with many safety features. Carruth maintained that the combined safety features required a specific sequence of events before the gun would shoot.

III.

## A. Did the trial court err in allowing the state to present the testimony of police Detective Jimmy Carruth concerning the attributes of the .45 caliber pistol?

¶11. Detective Jimmy Carruth testified as to the safety features of the particular brand of .45 caliber pistol recovered from the defendant. Carruth said there were six safety features incorporated into the design of the gun. He explained that the combined safety features required the following sequence of events before the gun would shoot: "You have to have a magazine, you have to have it cocked, you have to have the safety on, you have to have a round in the chamber, you have to have a squeeze on the back strap of the gun and also the trigger at one time." Carruth maintained that the pistol would not fire any other way.

¶12. Cotton contends that Carruth was permitted to give improper expert opinion testimony because he was never qualified or tendered as an expert witness, and that the introduction of this testimony was a violation of Unif.Crim.R.Cir.Ct.Pr. 4.06 because Carruth was not listed as an expert witness. The first issue is whether Carruth's testimony constituted expert testimony or whether it was admissible as lay testimony. Lay opinions are given limited admissibility under Mississippi Rule of Evidence 701 which provides as follows:

> [i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

Lay opinion testimony must meet a two prong test; the witness must have observed the fact or had first hand knowledge, and the opinion must be helpful to the determination of the issues. Comment, M.R.E. 701. The facts reveal that Carruth clearly failed the first prong. He certainly did not witness the events which allegedly occurred between Cotton and Dillon, and he even admitted that he had not inspected the specific weapon allegedly used in the assault. "The requirement of personal knowledge as a prerequisite to lay opinion testimony is absolute." *Wells v. State*, 604 So. 2d 271, 279 (Miss. 1992). This testimony did not qualify as admissible lay opinion.

¶13. "[W]here, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E. 702 opinion and not a Rule 701 opinion."*Sample v. State*, 643 So. 2d 524, 530 (Miss. 1994); *see Mississippi State Hwy Comm'n v. Gilich*, 609 So. 2d 367, 377 (Miss. 1992) (lay opinions require no specialized knowledge); *Wells*, 604 So. 2d at 279 (Miss. 1992) (testimony requiring particular knowledge to assist trier of fact is expert testimony). In the present case, Carruth attempted to explain to the jury the mechanical features of the brand of gun allegedly used in this incident, and he gave the opinion that the weapon would not fire unless a

specific sequence of events was followed. In order to assist the jury, he was indeed required to reveal particular knowledge about the Llama .45 caliber semi-automatic pistol. We find that the testimony given by Carruth constituted expert opinion.

¶14. The record reveals that Carruth was never qualified and tendered as an expert witness. It is reversible error to allow expert testimony from a witness never qualified or tendered as an expert. *Roberson v. State*, 569 So. 2d 691, 696 (Miss. 1990). The state's failure to list Carruth as an expert witness or provide any information regarding the substance of his testimony was also a violation of Unif.Crim.R.Cir.Ct.Pr. 4.06.

¶15. In *Sample v. State*, 643 So. 2d 524, 530 (Miss. 1994), this Court found that the trial court erred in permitting a police officer with a narcotics task force unit to testify as to the value, normal street usage and customary packaging of marijuana because the prosecution failed to qualify and tender the officer as an expert in this area. *Compare Frierson v. State*, 606 So. 2d 604, 607 (Miss. 1992) (police officer's opinion as to meaning of word "package" contained in note written to defendant inadmissible since officer was not qualified expert) *with Jackson v. State*, 551 So. 2d 132, 142 (Miss. 1989) (statement simply regarding officer's suspicion resulting from investigation is admissible lay opinion) *and Whittington v. State*, 523 So. 2d 966 (Miss. 1988) (introduction of expert opinion without tendering police officer as expert found to be harmless as opinion merely indicated officer was suspicious of circumstances surrounding alleged accident).

¶16. Because Carruth's expert testimony in the case at hand concerned the specific safety features of the alleged assault weapon, and the entire case ultimately centered on a determination of whether the gun fired by accident, this Court concludes that this case must be reversed and remanded to the circuit court for a new trial.

**B. Did the court err in allowing Dr. Tom Jeffcoat to testify concerning the medical condition of the alleged victim after the victim asserted his medical privilege?**

¶17. Cotton contends that the trial court erroneously permitted Dr. Jeffcoat to testify concerning communications made by the victim during treatment, as well as to any information learned by Jeffcoat in the course of treating Dillon. Rule 503 of the Mississippi Rules of Evidence provides as follows:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition . . . .

¶18. The doctor-patient privilege applies in criminal proceedings as well as civil proceedings. *Ashley v. State*, 423 So. 2d 1311, 1314 (Miss. 1983); *Keeton v. State*, 175 Miss. 631, 167 So. 68 (1936). The information revealed by Dr. Jeffcoat during trial falls directly within the category of information protected by the privilege. The information concerned confidential communications and information learned within the course of treatment. *Sessums v. McFall*, 551 So. 2d 178, 180-81 (Miss. 1989). Accordingly, the trial court erroneously allowed testimony from Dr. Jeffcoat about confidential information gained during the course of Dillon's treatment.

¶19. While Dillon had a right to raise the doctor-patient privilege in order to prevent disclosure of the

information revealed during treatment, the privilege is personal and may only be raised by the patient. **McCormick on Evidence**, § 102, pp. 252-53 (3d Ed. 1984). Cotton concedes that he does not have standing to raise the privilege for this reason, yet he claims that the privilege was duly invoked by Dillon,[1] and that the trial court's denial of the privilege resulted in prejudice to Cotton's defense at trial.

¶20. In *Vance v. State*, 182 Miss. 840, 183 So. 280 (1938), the defendant was involved in an argument which erupted into gunfire and ultimately led to the death of his opponent. During the gun fight, the defendant's daughter was hit with a bullet. 182 Miss. at 853-55. At trial, the daughter was denied her request to invoke the doctor-patient privilege and exclude the testimony of her doctor who ultimately testified that the bullet extracted from her wound came from the gun carried by her father, the defendant. *Id*. at 860. On appeal, this Court concluded that "even if it was error for the court to have admitted the testimony of the physician over the objection of [the daughter], in a legal sense that cannot operate in favor of the accused, and he cannot complain thereasto." *Id*. at 861.

¶21. The *Vance* decision primarily reinforces the proposition that only the patient has standing to raise the privilege. *See also* **Maddox v. State**, 173 Miss. 799, 163 So. 449 (1935) (only patient may waive privilege); *Davenport v. State*, 143 Miss. 121 (1926) (same). However, the Mississippi Rules of Evidence have since become the authority for our doctor-patient privilege. Under the Rules, we hold that a defendant may raise as an issue to this Court the trial court's denial of a patient's doctor-patient privilege during the defendant's trial provided the patient properly raised the privilege in the court below and the denial resulted in prejudice to the defendant. Otherwise, the privilege which we have chosen to recognize for public policy reasons has no effect in this particular situation; the patient can not assert as error on appeal the denial of his privilege since he is not a party to the suit.[2]

¶22. Dillon, the patient, properly raised the doctor-patient privilege in a motion in limine in the proceedings below. Because Cotton was prejudiced by the denial of this privilege, as the doctor's testimony was a large part of the prosecution's case against Cotton, we find that it was reversible error for the trial court to deny Dillon his privilege. Accordingly, this is grounds for a new trial. The court below must recognize the existence of Dillon's doctor/patient privilege on remand.

## C. Did the trial court err when it refused to dismiss the indictment for lack of a corpus delicti?

¶23. Corpus delicti is defined as the body or substance of the crime. It contains the following two elements which must be proved beyond a reasonable doubt in order to show that a crime has actually been committed: (1) the existence of a certain act or result forming the basis of a criminal charge and (2) the existence of criminal agency as the cause of this act or result. *Poole v. State*, 246 Miss. 442, 446, 150 So. 2d 429, 431 (1963). "Every element, criminal charge, and criminal agency must be proved beyond a reasonable doubt." *Id*. at 446.

¶24. In order to reduce the risk of a defendant being convicted of a crime never committed, this court requires independent proof of corpus delicti beyond extra judicial admissions or confessions. *Bullock v. State*, 447 So. 2d 1284, 1286 (Miss. 1984). The corpus delicti need only be proven by a preponderance of the evidence, and the confession may be used to raise the proof beyond a reasonable doubt. *Bullock*, 447 So. 2d at 1286.

¶25. Cotton argues that this case requires reversal because the only evidence establishing that a crime was committed were his own alleged admissions. In *Bullock*, this Court reversed the conviction of three

individuals for stealing cattle because other than their confessions, there was no evidence that the alleged owner was missing a cow, or in other words, that a crime had been committed. 447 So. 2d at 1287.

¶26. The case *sub judice* was unlike the situation presented in **Bullock** where there was no corroborative proof of an actual theft or crime. Although there were no independent witnesses to the crime in this case as pointed out by Cotton, "[c]orroborative proof will be held sufficient which satisfies the mind that it is real and not an imaginary crime for which [the] accused has confessed." **Poole**, 246 Miss. at 447, 150 So. 2d at 431-32. Corpus delicti is established where there is any corroborative proof that the crime charged has occurred. **Bullock**, 447 So. 2d at 1286 (citing **Heard v. State**, 59 Miss. 545, 546 (1882)).

¶27. In the case at hand, there existed independent proof that Cotton shot Dillon in the leg -- Dillon was admitted to the hospital with a gun shot wound to his leg. Dr. Jeffcoat even testified that the wound was not consistent with it having been an accident. Dillon stated to Dr. Jeffcoat that someone else besides himself was responsible for the injury. Without objection, two other police officers testified that Dillon, while at the hospital, said that Cotton shot him. Finally, Agent Cotton recovered the weapon from his brother who admitted shooting Dillon. This evidence appears to be sufficient to establish that a crime had been committed and that this conviction was not based upon imaginary events. We therefore find this assignment of error to be without merit.

### D. Did the court err when it allowed the state to call Maurice Ford, Chris Thomas, Jimmy Carruth and Dr. Tom Jeffcoat to the stand as rebuttal witnesses?

¶28. The defense maintains that the state purposely withheld Maurice Ford, Chris Thomas, Jimmy Carruth, and Dr. Tom Jeffcoat as witnesses in its case-in-chief so that they could be specifically called to rebut Clifton Dillon's testimony that he accidentally shot himself when he dropped the gun. The substance of Carruth's rebuttal testimony does not warrant any further discussion because, as indicated *supra*, the introduction of his testimony about the safety features of the .45 caliber pistol was already entirely improper constituting reversible error.

¶29. In regard to the testimony of Jeffcoat, Ford and Thomas, they each similarly testified that Dillon, while at the hospital, said he had been shot by Cotton. First, there was no objection to the rebuttal testimony of Jeffcoat. Cotton has therefore failed to preserve this as error for review by this Court since he failed to make a contemporaneous objection. **King v. State**, 615 So. 2d 1202, 1205 (Miss. 1993).

¶30. Nor does the record reveal proper objections to the testimonies of Ford and Thomas. A bench conference occurred immediately before Ford took the stand in rebuttal, but the substance of this conference was not recorded. Although the defense suggests that a proper objection was entered at this point, it is incumbent upon the party complaining of an error to preserve the record for appeal. The burden was on Cotton to make a contemporaneous objection, **Carr v. State**, 655 So. 2d 824, 852 (Miss. 1995); **Conner v. State,** 632 So. 2d 1239, 1255 (Miss. 1993); **Russell v. State**, 607 So. 2d 1107, 1117 (Miss. 1992), and to obtain a ruling. **Billiot v. State**, 454 So. 2d 445, 456 (Miss. 1984), *cert. denied,* 469 U.S. 1230, 105 S. Ct. 1232, 84 L. Ed. 2d 369, *reh. denied,* 470 U.S. 1089, 105 S. Ct. 1858, 85 L. Ed. 2d 154 (1985). Thus, this assignment of error is procedurally barred.

### E. Did the state improperly present evidence of other crimes in an effort to slander the defendant?

¶31. Cotton argues that the prosecution posed improper questions to the defense witness Felicia McGaffney in an attempt to inappropriately give the jury the inference that Cotton was involved in other illegal activities. During cross-examination, the prosecution delved into the reason Cotton had so much money in his house in the form of small bills.

¶32. In *Sumrall v. State*, 272 So. 2d 917, 919 (Miss. 1973), this Court held that the prosecution's interjection and repeated questioning concerning other criminal acts committed by the defendant was prejudicial and therefore reversible error. In *Caldwell v. State*, 443 So. 2d 806 (Miss. 1986), this Court stated:

> It is a settled rule in Mississippi that proof of a crime distinct from that alleged in the indictment is generally inadmissible at the accused's trial on the merits. *Eugene v. State*, 419 So. 2d 1330 (Miss. 1982). The rationale for this rule is that evidence of other crimes may tend to prejudice the minds of the jurors or confuse them as to the real issues on trial. . . . In *Brooks v. State*, 242 So. 2d 865 (Miss. 1971), this Court held that the "acid test" is the relevancy of the evidence to the purpose or purposes for which it is sought to be introduced.

¶33. The case at hand is distinguishable from *Sumrall* in that the prosecution in the case at bar, through its questioning, only made inferences of other criminal activity. Regardless, the questions were entirely irrelevant to the charges in the case at hand. As interpreted by this Court, the questions were clearly an attempt to give the jury the inference that Cotton needed small bills in order to deal narcotics. There was no probative value in this line of questioning, and the prosecution is admonished for this behavior.

¶34. Notwithstanding the inappropriate cross-examination of McGaffney, the court properly responded to and sustained the defense's objection to these questions. Because the defense failed to request that the jury be admonished, the sustaining of the objection was sufficient to prevent reversible error. *See Williams v. State*, 445 So. 2d 798, 809 (Miss. 1984) (court's sustaining of objection was sufficient to prevent reversal where defense failed to request admonishment). There is no reversible error where the court did all that it was asked to do. *Wetz v. State*, 503 So. 2d 803, 811 (Miss. 1987); *Clanton v. State*, 279 So. 2d 599 (Miss. 1973). The prosecution is nevertheless cautioned to avoid this line of questioning on remand.

## ¶35. REVERSED AND REMANDED.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Dillon asserted the privilege before trial in a motion in limine. The trial court denied Dillon's request and permitted the evidence to be introduced at trial. Dillon filed an amicus petition with this Court attaching his proposed amicus brief thereto. This Court denied the motion by Order dated September 8, 1993.

2. Dillon attempted to file a brief in this matter asserting error in regard to the denial of his doctor-patient privilege. His petition to file a brief was denied because he was not a party to this matter.