THE STATE OF OHIO, APPELLEE, *v.* TU, APPELLANT.

(Nos. WD-83-54 and -55—Decided
February 10, 1984.)

*Mr. William F. Hayes,* city prosecutor, for appellee.

*Mr. John P. Duffin,* county public defender, for appellant.

HANDWORK, J. This case is before the court on appeal from a judgment of the Perrysburg Municipal Court.

The essential facts are not in dispute. On November 21, 1981, Hung Q. Tu, defendant-appellant herein, was involved in an accident while driving his vehicle north on Interstate 75 in Wood County. Appellant's vehicle collided with a tractor-trailer rig, causing it to crash through a guardrail and roll down an embankment. The driver of the rig was killed instantly. Trooper Stein, of the Ohio Highway Patrol, arrived on the accident scene shortly after the collision. When he learned that appellant and his passenger had been injured in the crash, Trooper Stein requested an ambulance. While the officer remained at the accident scene, appellant and his passenger were taken to St. Luke's Hospital, where they were examined in the emergency room by hospital personnel. As part of the examination, the treating physician ordered that a blood test be taken. The blood sample was apparently taken by a nurse. A subsequent analysis of appellant's blood sample revealed a blood-alcohol concentration (BAC) level of 0.16 percent. Trooper Stein did not arrive at St. Luke's Hospital until several hours after the accident. At no time did the officer order or request a blood-alcohol test. In addition to these facts, both appellant and the prosecution have entered into the following stipulations:

"1. Trooper Stein contacted an ambulance to transport the defendant [appellant] to the hospital (the defendant having been injured in the accident).

"2. The hospital personnel where the defendant was taken are qualified to administer and report a blood-alcohol test.

"3. The defendant was admitted as an in-patient under his voluntary consent for medical treatment by Dr. J. Sawka.

"4. Dr. Sawka, as part of the treatment of the defendant, requested that a blood sample be drawn from the defendant for medical diagnosis and treatment.

"5. The Director of the Laboratory, Armando Bautista, and any laboratory personnel who performed the blood-alcohol test of the defendant are not qualified by or licensed through the Ohio Department of Health.

"6. The blood-alcohol test was not conducted within the two (2) hour time limitation as provided in Section 4511.19 of the Ohio Revised Code."

Ultimately, appellant was charged with driving while intoxicated and vehicular homicide, the latter being a violation of R.C. 2903.07. After certain pretrial proceedings, appellant filed a motion *in limine* seeking to exclude from the prosecution's case-in-chief the hospital records containing appellant's blood test. Eventually, on May 18, 1982, the trial court granted appellant's motion. The prosecution then filed a notice

of appeal pursuant to Crim. R. 12(J). (The state's appeal was later dismissed on procedural grounds, and a motion to certify the record to the Supreme Court of Ohio was overruled.) Sometime after the state's appeal was filed in this court, however, we released our opinion in *State* v. *Dress* (1982), 10 Ohio App. 3d 258. On January 19, 1983, the trial court reconsidered its previous ruling on appellant's motion *in limine*, in light of our opinion in *State* v. *Dress,* and denied the motion. Further proceedings were continued until May 5, 1983. Eventually, on May 25, the case proceeded to a trial before the court, which found appellant guilty of both charges. He was fined and sentenced to a term of imprisonment. This appeal followed.

Appellant's sole assignment of error is:

"The trial court erred when it admitted into evidence the results of a blood-alcohol test obtained by the defendant's physician during the course of medical treatment."

In support of this assignment of error, appellant argues that the trial court's admission in evidence of the hospital records containing his blood test contravened the physician-patient privilege afforded him by R.C. 2317.02(B). In so arguing, appellant essentially asks that we reconsider our earlier decision in *State* v. *Dress, supra,* in which we faced the identical question of whether Ohio's physician-patient privilege mandated the exclusion of

otherwise relevant, admissible evidence in a prosecution under R.C. 4511.19 for driving while intoxicated. This is the only question presently before us.[1]

The facts in *State* v. *Dress* are sufficiently similar to those in the case *sub judice* that we will forego repeating here all but the most essential ones. In *State* v. *Dress,* the defendant lost control of his vehicle, which then crashed. The injured defendant was taken to St. Luke's Hospital for treatment. Although the investigating officer was present in the emergency room, he did not order or suggest that a blood test be given. The examining physician, on his own initiative, ordered and administered a blood test to determine the alcohol concentration in the defendant's bloodstream. The test result revealed a BAC level of 0.25 percent. The defendant was subsequently charged with, and convicted of, driving while intoxicated. The principal issue on appeal was whether R.C. 2317.02(B), the physician-patient privilege, prevented the admission of the defendant's hospital records and the foundational testimony of the technician who analyzed the blood sample. R.C. 2317.02 states, in relevant part:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient * * *."

---

[1] While appellant has suggested in oral argument that the trial court erred in admitting the hospital records, because the blood-alcohol test was given more than two hours after the accident, he has neither separately raised this issue as an assignment of error nor separately briefed and argued it. See App. R. 12(A). See, also, *Burkhart* v. *Burkhart* (Dec. 16, 1983), Huron App. No. H-83-15, unreported, wherein we stated, in the syllabus:

"The role of an appellate court is to review and determine issues properly presented and briefed, not to conduct a scavenger hunt in an attempt to locate imagined errors that have not been affirmatively demonstrated. Pursuant to App. R. 12(A), any '[e]rrors not specifically pointed out in the record and separately argued by brief may be disregarded.' "

Thus, in this appeal, our review will be limited to the issue of the physician-patient privilege, as raised by appellant's only assignment of error.

In the most pertinent portion of the *Dress* opinion, we stated at pages 261-262:

"'* * * [T]he [physician-patient] privilege is premised on an underlying calculation that the benefits to the relationship ostensibly gained by excluding the information generated during its existence outweigh the burdens thereby imposed on the truth-seeking process and the administration of justice. Assertion of the privilege serves to remove from the trier of fact otherwise relevant, reliable and competent evidence. Because the privilege operates to the detriment of the truth-seeking process, it has been viewed as a pernicious anomaly in our system of evidence. See 8 Wigmore, Evidence (McNaughton Rev. 1961 Ed.), Sections 2380-2381. ('* * * [T]he privilege has come to mean little but the suppression of useful truth * * *.' *Id.* at 831.)

"Through statute or case law, an increasing number of jurisdictions are disallowing application of the physician-patient privilege in the context of criminal prosecutions, and, in particular, prosecutions for the offense of driving while intoxicated and related crimes. * * *

"We concede that the law, to a *reasonable* degree, should encourage a frank and uninhibited flow of information between doctor and patient by protecting their private, confidential communications. However, the privilege is not absolute and must yield when the public interest outweighs the policy considerations supporting the privilege. This is especially so in the context of a prosecution for the offense of driving while intoxicated. To allow the privilege to be invoked so as to exclude evidence tending to prove that appellant was driving while intoxicated would be against the public interest and would not serve the purpose of R.C. 2317.02(B). The privilege was not designed to operate in

this manner, nor will we sanction such use. * * * [Emphasis *sic*.]

"'* * *

"'* * * Driving while intoxicated, with its great potential for serious injury or death, undeniably represents a reckless and inexcusable disregard for the rights of other members of the travelling public. * * * The public interest in enforcing R.C. 4511.19, by prosecuting persons charged with having violated it, is indeed compelling. '* * * [T]he patient-physician privilege must give way where it conflicts with the sensible administration of the law and policy relating to drunken driving * * *.' * * *

"'* * * R.C. 2317.02(B), being in derogation of the common law, is to be given a strict construction. * * * In balancing the public interest in prosecuting those charged with driving while intoxicated against the patient's interest in having his confidential communication protected from disclosure and use in a court of law, we conclude that the public interest is acute and the patient's interest, under the facts of this case, is marginal at best. Consequently, policy considerations militate in favor of the sensible and efficient administration of criminal justice. The incidental burdens imposed on the physician-patient relationship in this case are far outweighed by the substantial benefits to the public in effectively enforcing R.C. 4511.19. * * *'" (Citations and footnote omitted.)

The rationale of the *Dress* opinion is clear. The public is entitled to every man's evidence, and evidentiary privileges, as such, impede the judicial search for truth. Privileges are typically justified by the values they seek to foster and preserve, such as the values inherent in frank disclosures of information between a physician and his patient or between an attorney and his client. Perhaps, to a *reasonable* degree and as a general rule, law and public policy should protect these communications by

legislatively circumventing unwarranted public scrutiny. However, with the exception of constitutional privileges — which are, in effect, not "privileges," but rights — *statutory* privileges, unless they expressly provide otherwise, were simply not designed or intended to shield criminal conduct. On the contrary, statutory privileges, and, in particular, the physician-patient privilege of R.C. 2317.02(B), have a limited purpose and were designed to implement a narrow legislative policy, as indicated above.

The argument which appellant advances, that people will be deterred from engaging medical help because of the possibility of subsequent disclosure in court, has little merit, factually speaking. Historically, there is no evidence whatsoever to suggest that people were more "deterred" from seeking medical treatment and advice *before* physician-patient privileges were enacted than afterward. Moreover, in jurisdictions presently having either *no* physician-patient privilege or an extremely limited one, people are no more "deterred" from exchanging private, confidential information with their physicians than they are in those jurisdictions having a broadly drawn statutory privilege. See 8 Wigmore, Evidence (McNaughton Rev. 1961 Ed.), Section 2380a. Thus, the "deterrence" premise that underlies arguments in favor of the privilege is, at best, a very tenuous assumption. We are not convinced by the cases that hold otherwise. See, *e.g., Branch* v. *Wilkinson* (1977), 198 Neb. 649, 663, 256 N.W. 2d 307. See, also, 8 Wigmore, *supra,* Section 2380a, at page 832. ("There is little to be said in favor of the privilege, and a great deal to be said against it. * * *" [Footnote omitted.])

In the context of a criminal prosecution for driving while intoxicated (and related crimes, see, *e.g.*, newly enacted R.C. 4511.19[A][3], driving with a specified concentration of alcohol), there is a further point to be made. By tendering a plea of "not guilty" to the offense charged, appellant thereby placed in issue each essential element, including (obviously) the element requiring proof of his intoxication. In other words, his plea of "not guilty" put his *physical condition* in issue. Yet, in asserting his physical condition as an element of the crime, an element to be proven beyond a reasonable doubt, appellant is simultaneously seeking to invoke an evidentiary privilege to preclude the prosecution from establishing precisely that element. This is patently unfair to a party already bearing extremely heavy burdens of proof and persuasion. In so-called "drunk driving" cases, evidence of the defendant's blood-alcohol test, if otherwise competent, is exceedingly relevant — indeed, vitally necessary — to proof of guilt. To allow the privilege to suppress that evidence would be to thwart the state's ability to offer *the best evidence* of guilt; it would, moreover, permit a defendant to evade the penalties therefor with impunity.

Unlike the *Dress* case, appellant's intoxicated driving in this case proximately caused another person's death. Consciously inebriating oneself to the point where driving a car becomes as dangerous (and as deadly) as recklessly discharging a firearm on a public sidewalk is inexcusable conduct that cannot be tolerated. We can hardly give our tacit imprimatur to it by approving the use of an artificial evidentiary privilege that excludes probative evidence of illegality. *State* v. *Dress, supra,* at 261-262. Simply put, the privilege must yield to competent evidence of conduct the law defines as criminal. The overriding public policy favoring the sensible and effective enforcement of R.C. 4511.19 far outweighs the limited purpose of and narrow policy considerations supporting Ohio's physician-patient privilege.

Consequently, this is the rule to be followed in this District.[2] In a criminal prosecution for driving while intoxicated, the physician-patient privilege, as expressed in R.C. 2317.02(B), does not preclude the receipt in evidence of hospital records containing the results of a blood-alcohol test administered to the defendant by a treating physician or other hospital employee. *State* v. *Dress, supra.* Nor does the privilege prevent the admission of properly qualified expert testimony necessary to provide foundational support for such evidence. See *State* v. *Dress, supra,* at 263-265.

Accordingly, appellant's sole assignment of error is not well-taken.

On consideration whereof, the judgment of the Perrysburg Municipal Court is hereby affirmed. This case is remanded to said court for execution of sentence and assessment of costs.

*Judgment affirmed.*

CONNORS, P.J., and RESNICK, J., concur.

---

[2] Inasmuch as we have examined, explained and reaffirmed the rule announced in *State* v. *Dress* (1982), 10 Ohio App. 3d 258, we further observe that a motion for leave to appeal in that case was overruled by the Supreme Court of Ohio on March 30, 1983.