The STATE of Ohio, Appellee,

v.

GABRIEL, Appellant.

[Cite as *State v. Gabriel* (1991), 72 Ohio App.3d 825.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–994.

Decided March 12, 1991.

*Michael Miller*, Prosecuting Attorney, and *Bonnie L. Maxton*, for appellee.
*James Kura*, County Public Defender, and *John W. Keeling*, for appellant.

RADCLIFFE, Judge.

In the Franklin County Court of Common Pleas, a jury found defendant-appellant, Emmett Gabriel, guilty of five counts of involuntary manslaughter and five counts of aggravated vehicular homicide. The trial court sentenced appellant on four counts of involuntary manslaughter and one count of aggravated vehicular homicide. Appellant was sentenced to four consecutive terms of five to fifteen years to be served consecutively with one sentence of three to five years for the aggravated vehicular homicide convictions. Appellant's driving privileges were suspended for life.

Appellant appeals this decision and raises the following two assignments of error:

"1. The trial court erred when it overruled the defendant's motion to dismiss the involuntary manslaughter charges on the grounds that the special provisions of the aggravated vehicular homicide charges took precedent over the general provisions of the involuntary manslaughter charges and further erred when it sentenced the defendant on four counts of involuntary manslaughter instead of aggravated vehicular homicide.

"2. The trial court erred when it allowed the defendant's physician and a medical technician to testify over the objection of the defendant on the grounds of privilege."

On the evening of December 27, 1988, Columbus Police Officer Lolita Perryman was on duty in the south end of Columbus. At approximately 6:30 p.m., Perryman was traveling south on High Street near the intersection of Frank Road and High Street. At this point, she observed a light blue car make a wide reckless turn onto High Street, fishtailing as the turn was made. Perryman decided to stop the driver, activated her beacons, made a U-turn and began traveling behind the light blue car in a northerly direction. Appellant

turned around, looked at Perryman and "hit the gas and took off." Perryman activated her sirens and began pursuit. Appellant ran a light at the intersection of Barthman Avenue and High Street, hitting a car which was turning south onto High Street. The impact of the collision killed the five occupants of the car instantly, and the car burst immediately into flames. Appellant's car then slid, hitting some parked cars and eventually came to a stop. Perryman testified that, during the pursuit, she was traveling approximately sixty-five to seventy miles per hour and was losing ground at a quick rate.

Appellant was taken by ambulance to Grant Hospital, where he was treated for trauma. On January 1, 1989 in the afternoon, Columbus Police Officer Kenneth Shofter, a member of the accident investigation squad, went to the hospital with his supervisor and another detective to attempt to interview appellant. At this point in time, appellant had not been arrested or charged. Prior to talking with appellant, they advised him of his constitutional rights. Appellant read and signed the waiver form. Appellant told them he did not remember the accident and that he had had no driver's license for the past three years. Appellant told them, voluntarily, that on the day of the accident he had drunk a fifth of whiskey and a six-pack of beer. Appellant also informed them that his car could easily go eighty miles per hour.

Dr. Barnes, a surgeon on call for the trauma service at Grant Hospital on the night of the accident, testified that blood is generally drawn from trauma patients for testing. He also testified that the blood-alcohol level test performed on appellant indicated that his level was .221, and that anything over .100 was considered evidence of intoxication. Additionally, Barnes smelled alcohol on appellant's breath and believed that appellant was intoxicated when he was brought to Grant Medical Center.

Paul Collins, the chemistry technician at Grant Hospital who analyzed appellant's blood, confirmed that his blood-alcohol level was .221.

 Appellant's first assignment of error raises the question of whether appellant could properly be charged with and tried for both involuntary manslaughter in violation of R.C. 2903.04, a general provision, and aggravated vehicular homicide in violation of R.C. 2903.06(A), a special provision.

The Ohio Supreme Court recently addressed this issue in *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134. In *Chippendale*, the court approached the statutory construction case by analyzing R.C. 1.51, the statute which addresses the proper construction of general and special or local provisions. R.C. 1.51 provides as follows:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict

between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

The *Chippendale* court noted that R.C. 1.51 does not come into play until a general and a special provision are found to constitute allied offenses of similar import and were not committed separately or with a separate animus. *Id.* at 120, 556 N.E.2d at 1136. The court concluded that R.C. 1.51 allows a prosecutor to charge a defendant with both a general provision and a special provision of the Criminal Code when they apply coextensively. *Id.* at 120–121, 556 N.E.2d at 1136–1137. The court went on to add that "[c]onversely, where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous on the matter, under R.C. 1.51, a prosecutor may charge only on the special provision. The only exception in the statute is where ' * * * the general provision is the later provision and the manifest intent is that the general provision prevail.' " *Id.* at 121, 556 N.E.2d at 1137.

Having identified the analytical framework, the court turned to the particular issue before it. The court determined that R.C. 1.51 applied to R.C. 2903.04(B), involuntary manslaughter, and R.C. 2903.06, aggravated vehicular homicide. It then proceeded to find that the legislature had intended the general and special provisions to apply coextensively. *Id.* at 122, 556 N.E.2d at 1137–1138. Consequently, the court held that a person involved in a vehicular fatality could be charged with manslaughter despite the applicability of the more specific provisions of aggravated vehicular and vehicular homicide. *Id.* The court further held that " * * * where the legislative intent is manifest that general and special provisions be applied coextensively and where the provisions are allied offenses of similar import, then the prosecution may charge on and try both, but the defendant may be sentenced upon his or her conviction for only one of the offenses." *Id.* Accordingly, the court found that the prosecution had properly charged Chippendale under both offenses and that the trial court had properly sentenced him on only one of the offenses. *Id.* at 123, 556 N.E.2d at 1138.

Thus, pursuant to *Chippendale*, appellant's first assignment of error is overruled.

In his second assignment of error, appellant asserts that the trial court improperly allowed appellant's physician and a medical technician to testify, in violation of R.C. 2317.02(B). R.C. 2317.02(B) prohibits a physician from testifying concerning a communication made to him by his patient in that relation. The statute defines communication to include laboratory results. R.C. 2317.02(B)(3). In support of his stance, appellant has attacked the

validity of existing cases which have held that the physician-patient privilege is not available to defendants charged with driving while intoxicated. *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672, decided April 25, 1990, is determinative as to the issue of the admissibility of the physician's testimony.

In *Smorgala*, the Court of Appeals for Lorain County had ruled that the physician-patient privilege of R.C. 2317.02(B) applied to blood test results in "drunk driving" cases. Because its decision conflicted with decisions of the Sixth District Court of Appeals, *State v. Dress* (1982), 10 Ohio App.3d 258, 10 OBR 372, 461 N.E.2d 1312, and *State v. Tu* (1984), 17 Ohio App.3d 159, 17 OBR 291, 478 N.E.2d 830, the record of *Smorgala* was certified to the Ohio Supreme Court. Paragraph one of the syllabus of *Smorgala* provides as follows:

"Courts may not create a public policy limitation upon the physician-patient privilege in order to allow otherwise clearly inadmissible evidence to be received in drunk driving cases."

Thus, the trial court erred when it admitted Barnes' testimony concerning appellant's blood-alcohol level and his opinion that appellant was intoxicated.

Appellant also attacks the propriety of admitting the medical technician's testimony, asserting that it also constituted a violation of R.C. 2317.-02(B). Although prior to *Smorgala*, one court had held that medical technicians could testify (*State v. McKinnon* [1987], 38 Ohio App.3d 28, 525 N.E.2d 821), that decision has been superseded by *Smorgala*. The *Smorgala* court disapproved of *State v. Dress supra*, and *State v. Tu, supra*, both of which held that R.C. 2317.02(B) did not preclude admission in a drunk driving case of hospital records of test results of blood-alcohol content. The Supreme Court in *Smorgala* expressly held to the contrary. Here, the state seeks to introduce the test results through the testimony of the technician who performed the test. As held in *Smorgala*, the test results are inadmissible as privileged. It necessarily follows that this privilege cannot be subverted by admission of the testimony of the technician who performed the test. Of necessity, tests are performed in laboratories by technicians. The privilege would be empty if it applied only when the doctor personally performed the test. Furthermore, as pointed out in the decision in *Smorgala*, R.C. 2317.-02(B) has been recently amended to expand the definition of "communication." R.C. 2317.02(B) now expressly provides that " 'communication' may include, but is not limited to, any * * * hospital communication such as a record, * * * laboratory test and results, * * * [or] financial statement * * *." The basic definition defines communication as "acquiring, recording, or transmitting * * * in any manner, concerning any facts, opinions, or statements necessary to enable a physician * * * to diagnose, treat, prescribe, or act for a patient."

■ While the trial court erroneously admitted the medical technician's and Barnes' testimony, this error is not prejudicial since we determine that, disregarding that testimony, there was substantial evidence that appellant was intoxicated. *State v. Davis* (1975), 44 Ohio App.2d 335, 73 O.O.2d 395, 338 N.E.2d 793, paragraph three of the syllabus. Because there was substantial evidence of appellant's intoxication, we find that the error was not prejudicial. There was evidence that, during the afternoon of the day of the accident, appellant admitted he had consumed a fifth of whiskey and a six-pack of beer. Additionally, Perryman's attention was first drawn to appellant because of his "reckless" driving, and he continued to drive in an irresponsible manner.

Appellant's second assignment of error is overruled.

For the foregoing reasons, the assignments of error are overruled and the judgment of the Franklin County Common Pleas Court is affirmed.

*Judgment affirmed.*

WHITESIDE and MCCORMAC, JJ., concur.

GERALD E. RADCLIFFE, J., of the Ross County Common Pleas Court, sitting by assignment.