**STATE of Iowa, Appellee,**

v.

**Ryan HENNEBERRY, Appellant.**

No. 95–2052.

Supreme Court of Iowa.

Jan. 22, 1997.

Dave Hughes, Cascade, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Fred H. McCaw, County Attorney, and Mark T. Hostager, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, Ryan Henneberry, appeals a bench verdict finding him guilty of driving while under the influence of alcohol, based on blood evidence taken by medical personnel for treatment and diagnostic purposes. We reverse and remand.

## I. Background Facts and Proceedings

Shortly before 8:00 p.m. on September 11, 1993, defendant Ryan Henneberry, a juvenile, was driving his car when he failed to negotiate a curve and drove his car into a ditch. A nearby resident contacted the authorities and deputy David Boardman arrived at the site of the accident shortly thereafter. Medical personnel were already on the scene and deputy Boardman was only able to speak briefly with Henneberry before they took him to the county hospital. Henneberry had suffered a head injury and was bleeding profusely, but before being transported to the hospital, he submitted to and failed a preliminary breath test (PBT) at approximately 8:10 p.m.

Deputy Harley Pothoff was dispatched to the hospital to meet Henneberry, but by the time Pothoff arrived, Henneberry was al-

ready in surgery. Deputy Pothoff was unable to form an opinion as to Henneberry's sobriety. While at the hospital, medical personnel (at the request of the attending physician) drew a sample of Henneberry's blood for diagnostic and treatment purposes. There was no written request for the blood test by deputy Pothoff under implied consent provisions. *See* Iowa Code § 321J.6 (1993). The specimen was subsequently processed and revealed a blood-alcohol concentration (BAC) of 0.18.

Because Henneberry was a juvenile, deputy Pothoff contacted his parents while he was being treated. When they arrived at the hospital at approximately 11:10 p.m. that evening, Henneberry's medical treatment had concluded and Pothoff began the implied consent procedures. At 11:18 p.m., Henneberry and his parents consented to the withdrawal of a second blood specimen, pursuant to the implied consent law. That blood sample revealed a BAC of .125. Based on this result, deputy Pothoff immediately served Henneberry with a notice of revocation, pursuant to chapter 321J of the Code. The result of this sample, however, was later suppressed because deputy Pothoff failed to obtain proper consent.

Prior to trial, the prosecutor sought a subpoena duces tecum to obtain the medical records pertaining to the first blood specimen. Henneberry filed a motion to quash. The district court found that although the records fell within the scope of the physician-patient privilege, public policy demanded that the evidence be admitted. At the bench trial, the only evidence of Henneberry's BAC was the .18 obtained from the sample which had been taken for purposes of medical treatment and not pursuant to implied consent. This evidence was admitted over defendant's objections that it violated the statutory physician-patient privilege. *See* Iowa Code § 622.10. Solely on this evidence, the district court found Henneberry guilty of operating a motor vehicle while having a BAC of .10 or more, in violation of section 321J.2(1) of the Code. It is from this judgment that Henneberry appeals.

II. Standard of Review

■ We review the trial court's interpretation of section 622.10 to determine if an error of law has occurred. *State v. Deases*, 518 N.W.2d 784, 787 (Iowa 1994); *State v. Jones*, 490 N.W.2d 787, 789 (Iowa 1992).

III. Issue on Appeal

The sole issue on appeal is whether the blood sample taken by the emergency room personnel is admissible in spite of the statutory physician-patient privilege.

■ Iowa Code section 622.10 prohibits a physician, surgeon, or physician's assistant from disclosing, in testimony, any confidential communication obtained because of that person's employment and entrusted to the physician in his or her professional capacity. *Deases*, 518 N.W.2d at 787; *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). The physician-patient privilege is intended to promote free and full communication between a patient and his or her doctor so that the doctor will have the information necessary to competently diagnose and treat the patient. *State v. Bedel*, 193 N.W.2d 121, 124 (Iowa 1971). We construe this statute liberally to carry out its manifest purpose. *State v. Tornquist*, 254 Iowa 1135, 1154, 120 N.W.2d 483, 494 (1963).

■ Three elements must be established in order for the privilege to be applicable: (1) the relationship of doctor-patient; (2) the acquisition of the information or knowledge during this relationship; and (3) the necessity of the information to enable the physician to treat the patient skillfully. *Deases*, 518 N.W.2d at 787; *Snethen*, 308 N.W.2d at 14. There is no dispute that each of these elements is sufficiently met in this case.

■ The term "communication" as used in section 622.10 has been interpreted to mean "all knowledge and information gained by the physician in the observation and personal examination of the patient in the discharge of his duties." *State v. District Ct.*, 218 N.W.2d 641, 643 (Iowa 1974). Accordingly, "[t]he information placed in hospital records is privileged communications under section 622.10 'to the same extent that the knowledge and information of the examining or treating physician is privileged.'" *State v. Eldrenkamp*, 541 N.W.2d 877, 881 (Iowa 1995) (quoting *Newman v. Blom*, 249 Iowa 836, 844, 89

N.W.2d 349, 355 (1958)). We have previously applied the privilege specifically to blood samples. *Id.* In *Eldrenkamp*, we noted: "Information or data recovered from the testing of blood is information furnished passively, through submission to inspection, and is generally under the protection of the physician-patient privilege." *Id.* (citing 8 J. Wigmore, *Evidence* § 2384 (McNaughton rev. ed. 1961)).

■ The trial court found that introduction of the medical records and information obtained by the drawing of Henneberry's blood came within the privilege of section 622.10, but that public policy demanded an exception be made so that this evidence could be introduced at trial. The trial court relied on two cases from the Ohio Court of Appeals recognizing such an exception. *See State v. Tu*, 17 Ohio App.3d 159, 478 N.E.2d 830 (1984); *State v. Dress*, 10 Ohio App.3d 258, 461 N.E.2d 1312 (1982). In both cases, the Ohio courts balanced the public interest in prosecuting drunk drivers and the policy considerations behind the privilege and found that the public interest prevails. *Tu*, 478 N.E.2d at 833; *Dress*, 461 N.E.2d at 1317. We find these cases, however, to be nonpersuasive. Both were subsequently disavowed by the Ohio Supreme Court in *State v. Smorgala*, 50 Ohio St.3d 222, 553 N.E.2d 672 (1990). In *Smorgala*, the judicial creation of a public policy exception to the statutory physician-patient privilege was examined and expressly rejected. *Smorgala*, 553 N.E.2d at 673. As the Ohio court emphasized in its syllabus, "Courts may not create a public policy limitation upon the physician-patient privilege in order to allow otherwise clearly inadmissible evidence to be received in drunk driving cases." *Id.*

■ We agree with Ohio's analysis of this issue. The creation of an exception to the statutory privilege is solely within the province of the legislature, and not the judiciary. As this court has noted, "[t]he legislature, and not this court, declares the public policy of this state." *State v. Bruntlett*, 240 Iowa 338, 355–56, 36 N.W.2d 450, 460 (1949). The legislature has expressly codified certain instances where the public's right to know outweighs the policy behind the privilege. *See, e.g.*, Iowa Code § 232.69(1)(a) (mandatory reporting of child abuse); *id.*

§ 235B.3(2)(e) (mandatory reporting of dependant adult abuse); *id.* § 147.11 (mandatory reporting of wounds by criminal violence). For this court to create a public policy exception to section 622.10, as the State urges, would undermine the legislature's intent and would constitute an overreaching of judicial authority.

Our decision is in accord with other jurisdictions that have considered this very issue. *See State v. Pitchford*, 10 Kan.App.2d 293, 697 P.2d 896 (1985); *State v. McElroy*, 553 So.2d 456 (La.1989); *State v. Elwell*, 132 N.H. 599, 567 A.2d 1002 (1989); *State v. Roper*, 122 N.M. 126, 921 P.2d 322 (1996); *State v. Lampman*, 82 Ohio App.3d 515, 612 N.E.2d 779 (1992); *State v. Gabriel*, 72 Ohio App.3d 825, 596 N.E.2d 538 (1991). *But see Oxford v. Hamilton*, 297 Ark. 512, 763 S.W.2d 83, 84 (1989) (blood test not protected by privilege, based on Arkansas' construction of Uniform Rules of Evidence and the term "confidential communication."); *State v. Drdak*, 330 N.C. 587, 411 S.E.2d 604, 607 (1992) (blood evidence admissible because North Carolina's statutory privilege allows admission of evidence at discretion of judge if "necessary for proper administration of justice").

The State cites *State v. Grimmell* in support of its contention that the privilege should not apply in drunk driving cases. In *Grimmell*, we stated that we did not believe the legislature intended the statutory adoption of the privilege "to operate as a barrier to the enforcement of the criminal laws of the state." *State v. Grimmell*, 116 Iowa 596, 601, 88 N.W. 342, 344 (1901). But the facts in *Grimmell* are easily distinguished from the case at bar. In *Grimmell*, a murder defendant attempted to use the privilege as a shield to his prosecution. The defendant fatally injured a woman while attempting to induce a miscarriage. *Id.* at 598, 88 N.W. at 342. He then attempted to suppress the physician's testimony as to the cause of his victim's death by claiming any testimony given violated the physician-patient privilege. *Id.* at 599–600, 88 N.W. at 343. Our decision that the privilege was not absolute in this criminal case turned upon the circumstances of the case. We explained:

If the patient were alive, perhaps no one but she could waive the prohibition. But in this case she is dead and unable to speak. If in a civil case her representative may waive the prohibition, we see no good reason for saying that in a criminal one the prohibition is absolute. The purpose of the statute, as we have said, is to protect the patient, and not to shield one who feloniously takes his life.

*Id.* at 601, 88 N.W. at 344.

We have previously considered the privilege in the context of drunk driving and held that it was inapplicable when the subject voluntarily submitted to a blood test and for the purposes of determining his BAC. *See State v. District Ct.,* 218 N.W.2d at 644. In ruling that the blood test results should not be suppressed, we noted "[t]he physician-patient privilege was not designed, nor will it be extended, to act as a shield behind which the patient may take refuge after flunking a ... blood alcohol test *to which he voluntarily assented." Id.* (emphasis added). But in the case at bar, the blood sample was taken for diagnostic and treatment purposes only and thus was not taken voluntarily to the extent that the BAC would be used as evidence against the patient.

The police had means other than the physician-ordered blood test available to them to gather evidence against Henneberry when they suspected him of driving drunk. There is no indication in the record that deputy Pothoff made any effort to obtain an independent blood sample during the course of Henneberry's treatment. Instead, he failed to invoke the implied consent proceedings at the hospital within the two-hour window after giving the PBT. The police cannot be excused from this failure by the creation of an exception to a statutory privilege merely because the second blood test was necessarily suppressed. As the *Smorgala* court noted, "[b]efore the State raises the spectre of being disarmed by judicial fiat in its war against drunk drivers, it should use the tools supplied by the General Assembly." *Smorgala,* 553 N.E.2d at 675.

Because the blood sample was taken by medical personnel for diagnostic and treatment purposes only and not as authorized under the statutory implied consent provision, evidence of defendant Henneberry's

BAC is inadmissible under the physician-patient privilege. The district court erred in determining a public policy exception existed to the privilege. The decision of the district court is reversed. The case is remanded for further proceedings as appropriate under the law.

**REVERSED AND REMANDED.**